# 24-0653-cv

## United States Court of Appeals

*for the*

## Second Circuit

WEI SU, HAI JUAN WANG,

*Plaintiffs-Appellants,*

– v. –

YEO HWANG YEH,

*Defendant-Appellee,*

– v. –

SOTHEBY'S INC.,

*Defendant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFFS-APPELLANTS

THE LAW OFFICES OF
XUEJIE WONG PLLC
139 Centre Street, Suite 208
New York, New York 10013
(212) 941-5483

*Attorneys for Plaintiffs-Appellants*

 COUNSEL PRESS    (800) 4-APPEAL • (330470)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................... iii

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT .............................................. 4

STATEMENT OF ISSUES ........................................................... 4

STATEMENT OF THE CASE ....................................................... 6

    A.    FACTUAL BACKGROUND ........................................ 6

    B.    PROCEDURAL BACKGROUND ................................. 7

        1.    Pleadings ............................................................. 7

        2.    Dispositive Motions ........................................... 8

            a.    Judgment on the Pleadings ...................... 8

            b.    Summary judgment ................................... 9

        3.    Trial ................................................................... 10

        4.    Post-Trial Proceedings ..................................... 10

STANDARD OF REVIEW ........................................................ 11

SUMMARY OF ARGUMENT ................................................... 12

ARGUMENT ............................................................................. 17

    I.    THE DISTRICT COURT ERRED AS A MATTER OF LAW IN NOT GRANTING JUDGMENT ON THE PLEADINGS ............ 17

    II.    THE DISTRICT COURT ERRED AS A MATTER OF LAW IN NOT GRANTING SUMMARY JUDGMENT ............................. 22

        A.    The Law Relevant to the Motion ........................... 23

            1.    The requisite wrongdoing and reliance .......... 23

            2.    Diligence ....................................................... 24

        B.    The Facts Relied on by the Court As to "Concealment" Were Not Material Under New York Law ............... 26

i

C.    The Court Erred in Denying the Motion Because Yeh's
Demand Letter Established His Lack of Reliance and
Diligence ...................................................................................31

III.   THE TRIAL OPINION ERRED IN HOLDING THAT
"AFFIRMATIVE CONCEALMENT" WAS SUFFICIENT
TO SUPPORT ESTOPPEL AND THAT YEH ACTED
DILIGENTLY ....................................................................................35

A.    Errors as to "Affirmative Concealment": No Acts
During the 2007-10 Estoppel Period ........................................36

B.    The Authority Cited by the Court Does Not Support Its
Conclusions of Law ..................................................................39

C.    The Court Erred in Determining New York Law
Regarding Diligence .................................................................42

IV.    THE COURT ERRED AS A MATTER OF LAW IN
CONCLUDING THAT SU CONVERTED THE VESSEL...............44

A.    The court's conclusions of law on conversion erred as
to New York law on Su's rights as co-owner ...........................45

B.    The Court Erred in Finding as a Matter of Law That
Conversion Occured When Yeh Had No Right to
Possession ................................................................................47

C.    The Court Erred in Finding Conversion When Yeh
Failed to Prove Any Harm ........................................................50

V.    THE COURT ERRED IN ORDERING THE VESSEL TO
BE SOLD AND THE PROCEEDS DIVIDED BETWEEN
THE PARTIES ..................................................................................52

A.    The Court Erred as a Matter of Law in Concluding
That the Shanghai Judgment Gave Yeh a Joint Right to
Possession ................................................................................52

B.    The Court Erred as a Matter of Law in Ordering a
Forced Sale ..............................................................................56

C.    Yeh is Not Entitled to Sale Proceeds .......................................58

CONCLUSION .............................................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abbas v. Dixon*,
    480 F.3d 636 (2d Cir. 2007) ..........................................................43

*Abercrombie v. Andrew Coll.*,
    438 F. Supp. 2d 243 (S.D.N.Y. 2006) ..........................................19

*Am. Soc. for Prevention of Cruelty v. Animal and Plant Health Ins. Serv.*,
    60 F.4th 16 (2d Cir. 2023) ..............................................................11

*Baier v. Baier*,
    191 A.D.3d 401 (1st Dep't 2021) ..................................................25

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 ............................................................................. 21-22

*Bennett Silvershein Assocs. v. Furman*,
    No. 91 Civ. 3118, 1997 WL 531310 (S.D.N.Y. Aug. 28, 1997)..................40

*Capasso v. Capasso*,
    129 A.D.2d 267 (1st Dep't 1987) ..................................................57

*Chiang v. Chang*,
    137 A.D.2d 371 (1st Dep't 1988) ..................................................57

*Coleman v. Golkin, Bomback & Co., Inc.*,
    562 F.2d 166 (2d Cir. 1977) ..........................................................49

*Corsello v. Verizon NY, Inc.*,
    8 N.Y.3d 777 (2012)........................................................24, 33, 41

*Davis v. Blige*,
    505 F.3d 90 (2d Cir. 2007) ............................................................51

*DeVito v. Neiman*,
    548 F. Supp. 3d 314 (E.D.N.Y. 2021) .....................................44, 45

*Farkas v. Farkas*,
    168 F.3d 638 (2d Cir. 1999) ...........................................18, 39, 40, 41

*Ferguson v. McLoughlin*,
    184 A.D.2d 294 (1st Dep't 1992) ..................................................57

*Gates v. Bowers*,
    169 N.Y. 14 (1901) ...................................................................47

*General Stencils, Inc. v. Chiappa*,
    18 N.Y.2d 125 (1966) .............................................................41

*Gleason v. Spota*,
    194 A.D.2d 764, 599 N.Y.S.2d 297 (2d Dep't 1993) ..................25

*Heffernan v. City of Paterson, NJ*,
    578 U.S. 266, 136 S. Ct. 1412 (2016) .....................................51

*Hudson v. Swan*,
    83 N.Y. 552 (1881) ............................................................46, 47

*Jordan v. Ford Motor Co.*,
    73 A.D.2d 422 (4th Dep't 1980).............................................42

*Kaufman v. Cohen*,
    307 A.D.2d 113 (2003) .......................................................41, 42

*Koral v. Saunders*,
    36 F.4th 400 (2d Cir. 2022) ............................................*passim*

*Loomis v. Ace American Ins. Co.*,
    91 F.4th 565 (2d Cir. 2024) ....................................................11

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) .....................................................21

*Macklowe v. Macklowe*,
    176 A.D.3d 470 (1st Dep't 2019), *after remand,* 181 A.D.3d 475
    (1st Dep't 2020)....................................................................57

*Matter of Rothko's Estate*,
    43 N.Y.2d 305 (1977)............................................................58

*McCoy v. American Exp. Co.*,
    253 N.Y. 477 (1930)....................................................47, 48, 49

*Newton v. Porter*,
    69 N.Y. 133 (1877) ...............................................................48

*Novelty Crystal v. PSA Inst.*,
    49 A.D.3d 113 (2d Dep't 2008)..............................................45

*Osborn v. Schenck*,
    83 N.Y. 201 (1880) ...................................................................46, 47

*Pearl v. City of Long Beach*,
    296 F.3d 76 (2d Cir. 2002) .....................................................40

*Putter v. No. Shore Univ. Hosp.*,
    7 N.Y.3d 548 (2006) ...........................................................25, 34

*Ross v. Louise Wise Servs., Inc.*,
    8 N.Y.3d 478 (2007).......................................................21, 24, 38

*Royal Crown Day Care LLC v. Dep't of Health*,
    746 F.3d 538 (2d Cir. 2014) .....................................................26

*Salve Regina College v. Russell*,
    499 U.S. 225 (1991)...............................................................11

*Santo B. v. Roman Catholic Archdiocese of New York*,
    51 A.D.3d 956 (2d Dep't 2008).................................................43

*Seawall Assocs. v. City of New York*,
    74 N.Y.2d 92 (1989).............................................................45

*Smith v. Cutson*,
    188 A.D.2d 1034 (4th Dep't 1992) ............................................41

*Smith v. Smith*,
    830 F.2d 11 (2d Cir. 1987) ...........................................*passim*

*Thea v. Kleinhandler*,
    807 F.3d 492 (2d Cir. 2015) ............................................18, 20, 22

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7
    (2d Cir. 2014)......................................................................19

*US v. Stefonek*,
    179 F.3d 1030 (7th Cir. 1999) .................................................51

*VRW, Inc. v. Klein*,
    68 N.Y.2d 560 (1986)............................................................46

*Zervos v. Verizon New York, Inc.*,
    252 F.3d 163 (2d Cir. 2001) ....................................................11

v

*Zumpano v. Quinn*,
    6 N.Y.3d 666 (2006) .................................................................*passim*

**Statutes & Other Authorities:**

23 *N.Y. Jur.2d*, Conversion § 14 ...............................................................47

23 *N.Y. Jur. 2d* Conversion § 28 ...........................................................48, 50

28 U.S.C. § 1291 ..........................................................................................4

28 U.S.C. § 1332(a) .....................................................................................4

28 U.S.C. § 1367(a) .....................................................................................4

C.P.L.R. § 213(8) .......................................................................................20

C.P.L.R. § 214(3) .........................................................................................2

Domestic Relations Law § 236(B)(5) ......................................................57

New York Commercial Code § 2-403 ...........................................46, 49, 50

*Restatement (Second) of Torts § 907 (1977)* ..........................................51

## INTRODUCTION

In 2007, Wei Su ("Su"), a Chinese national, bought an ancient Chinese bronzeware artifact (known in this case as "the Vessel") from Zhang Shenbao ("Zhang") in Shanghai. Little did he expect that his purchase would embroil him in a seven-year battle in the courts of New York. Indeed, all was quiet until 2014 when he decided to sell the Vessel. Not being familiar with the international art markets, he arranged for Hai Juan Wang, who had worked for a Chinese auction house, to consign the Vessel to Sotheby's, Inc. for auction. When Sotheby's advertised the Vessel as part of an upcoming auction, one Yeh Yao-Hwang ("Yeh"), a resident of Taiwan, wrote to Sotheby's through his lawyers, saying that he was the Vessel's co-owner and demanding that Sotheby's not continue with the auction.

Sotheby's and Yeh's lawyers, the Correct Law Firm, exchanged letters. Then Correct wrote to Sotheby's saying that they had been instructed by Yeh to say that Yeh now knew that Su, not Zhang, was the consignor, and that if Su and Sotheby's did not return the Vessel to Yeh, he would "exhaust all possible legal means to safeguard my ownership rights in [the Vessel]."

Faced with that threat, Sotheby's refused to proceed with the auction; and there things sat for almost three years. In June 2017 Su sued Sotheby's for breach of the consignment agreement and for replevin to get the Vessel back. Because the Vessel was then in New York, Su filed the suit in the Southern District. Sotheby's

1

counterclaimed with an interpleader action naming Su and Yeh. Yeh was finally served in late 2018. In 2019, he answered the interpleader and filed a Cross-claim against Su for conversion.

The Cross-claim admitted that a 2006 judgment by the Shanghai People's High Court against Yeh had given Zhang the sole right to possess the Vessel; and it was ambiguous as to when the alleged conversion occurred. One possibility was 2007 when Su bought the Vessel, and the other was 2014 when Su consigned it to Sotheby's.

Su answered the Cross-claim and quickly moved for judgment on the pleadings on the ground that the claim was barred by New York's 3-year statute of limitations, C.P.L.R. 214(3) (the "Statute"). Yeh opposed the motion on the ground that the 6-year statute of limitations for fraud applied. In a footnote in his brief, he mentioned the possibility that discovery might show a basis for "equitable tolling." To Su's surprise, the district court denied his motion, finding that "arguments" made in Yeh's opposing brief showed a "potential equitable estoppel argument."

After discovery, Su moved for summary judgment on the grounds that (1) there was no evidence of any "affirmative wrongdoing" by Su that could support estoppel as required by the only case Yeh had cited in his footnote, (2) that "concealment" was not sufficient to establish estoppel because Yeh and Su did not have a fiduciary or confidential relationship, and (3) Yeh had not acted with

2

diligence to sue after he had learned in 2014 of his potential claim and Su's identity. Once again, the district court gave Yeh another bite at the apple, denying the motion on the ground that there were triable issues as to "active concealment" and as to whether Yeh had any duty of diligence before he learned of Sotheby's interpleader.

A seven-day bench trial followed in 2022. The court found that Su had converted the Vessel in 2007 and Su was estopped from asserting the Statute as a defense due to his "elaborate scheme of concealment" from 2007 until 2019. The court did not cite any evidence that Su had made any misrepresentation to Yeh about the alleged conversion or Yeh's rights. Nor did the court cite any evidence that Yeh relied on any alleged concealment or that he met his duty of diligence required by New York estoppel law. Moreover, the court ignored precedent under New York law that Yeh's knowledge in November 2014 about Su's consignment meant that as a matter of law Yeh could not satisfy the required estoppel elements of reliance or diligence.

But that was not all. Recognizing that Yeh had not offered any evidence as to damages or other remedy, the court gave him yet another bite and ordered additional briefing and even suggested (complete with case cites) that Yeh might be entitled to a "forced sale of the Vessel." Sixteen months later, the court issued an "Opinion and Judgment" ordering that the Vessel be sold and the proceeds split equally.

3

This appeal followed, and the district court has stayed the case "pending resolution of the appeal."

## JURISDICTIONAL STATEMENT

The district court had diversity jurisdiction under 28 U.S.C. §1332(a) with respect to the complaint by Su against Sotheby's and to Sotheby's Counterclaim in interpleader. The district court had supplemental jurisdiction under 28 U.S.C. §1367(a) over Yeh's Cross-claim. A-110, n. 1.

The district court entered its Opinion and Judgment on February 7, 2024 (SPA1-SPA15) ordering the sale of the Vessel with the net proceeds to be split equally between Yeh and Su. Su filed a timely notice of appeal on March 4, 2024. A-369. This Court has jurisdiction under 28 U.S.C. § 1291.

The court's decision on Su's summary judgment motion is reported at 490 F.Supp.3d 725 (S.D.N.Y. 2020).

## STATEMENT OF ISSUES

1. Whether the district court erred as a matter of law in denying Su's Motion for Judgment on the Pleadings.

2. Whether the district court erred as a matter of law in denying Su's Motion for Summary Judgment.

4

Case: 24-653, 06/14/2024, DktEntry: 30.1, Page 12 of 84

3. Whether the district court erred as a matter of law in determining, after trial, that New York law recognizes "active concealment" a basis of estoppel to assert the statute of limitations even in the absence of a fiduciary or confidential relationship.

4. Whether the district court erred as a matter of law in determining, after trial, that Su was estopped because he engaged in, and Yeh relied on, "affirmative concealment" and that Yeh exercised "reasonable diligence" by suing within three years after "active concealment" ended.

5. Whether the district court erred as a matter of law in determining that Su, as a co-owner with sole right of possession, converted Yeh's co-ownership interest by buying the Vessel or consigning it for an auction that did not occur.

6. Whether the district court erred as a matter of law in determining that New York law permits the forced sale of converted property as a remedy for conversion and in ordering the proceeds to be distributed equally.

## STATEMENT OF THE CASE

### A.    FACTUAL BACKGROUND

In 2005, Zhang Shenbao and Yeh had a dispute over rights in the Vessel. A-313.[1] The dispute was litigated in Chinese courts, and ultimately the Shanghai High People's Court held in 2006 that Yeh and Zhang were co-owners of the Vessel and that Zhang had the right to possess the Vessel (the "Shanghai Judgment"). A-302-A-304. In September 2007, Su bought Zhang's interest in the Vessel and took possession. A-314.

Su unsuccessfully tried to sell the Vessel at auction in 2011. A-315. In August 2014, he consigned the Vessel, through his agent Wang, to Sotheby's. *Id*.[2]

In September 2014, Yeh, having learned from an advertisement that Sotheby's was going to auction the Vessel, asserted to Sotheby's that he was a co-owner of the Vessel and demanded that Sotheby's not auction the Vessel. Until that time, Su had not heard of Yeh or of any adverse claim to his ownership. A-137 ¶7. By November 2014, Yeh knew that Su had consigned the Vessel and claimed ownership. A-156;

---

[1] Unless otherwise indicated, the following statements of fact are taken from opinions of the district court.

[2] Although the court's Trial Opinion (A-338) held Wang liable for conversion because of her actions in connection with the consignment, the only relief granted in the Judgment—the forced sale—does not affect her because she has no interest in the Vessel. For this reason and for simplicity, this Brief will refer to the Appellants in the singular as Su.

A-165-A-167. Indeed, Yeh's counsel wrote a letter to Sotheby's ("Yeh's Demand Letter"), which included statements Yeh instructed his counsel to make and which was copied to Yeh. That letter acknowledged that Su was the consignor and threatened to sue Sotheby's and Su: "I will exhaust all possible legal means to safeguard my ownership rights." *Id.*

Based on Yeh's claim and threat, Sotheby's refused to auction the Vessel. A-315. Sotheby's refusal continued even when years passed without Yeh taking any action to "safeguard his legal rights." Su finally demanded that Sotheby's return the Vessel because the Shanghai Judgment gave Zhang, and therefore Su, the sole right of possession. A-304; A-54 ¶13; A-55 ¶26. But Sotheby's refused to return the Vessel to Su. A-137 ¶10.

## B.   PROCEDURAL BACKGROUND[3]

### 1. Pleadings.

Su finally sued Sotheby's in June 2017 for breach of contract and replevin. Sotheby's responded with an interpleader counterclaim naming Su, Wang, and Yeh. Dkt. 101. There was an extended delay while Sotheby's tried to serve Yeh. Yeh did not file his Cross-claim for conversion until May 24, 2019, four and a half years after

---

[3] This case started as an action for breach of a consignment, morphed into an interpleader, and ended up as an action for conversion. A-311 As a result, much of the docket concerns facts and legal issues which are not germane to this appeal.

7

he learned from Sotheby's that Su was the consignor. A-50-A-58. Su's Answer asserted the Statute as an affirmative defense. A-68.

In May, 2019 Sotheby's and Su stipulated to dismissal of the damages claims against Sotheby's. Dkt. 102. Therefore, in July 2019, the Court discharged Sotheby's from the litigation as a "'classic' disinterested stakeholder," but ordered Sotheby's to retain care and custody of the Vessel pending resolution of Yeh's and Su's claims. Dkt. 112.

**2. Dispositive Motions**

a. Judgment on the Pleadings.

In June 2019, Su moved for judgment on the Cross-Claim-related pleadings. A-70-A-77. The motion was based on the ground that New York's three-year Statute for conversion barred Yeh's claims. *Id.* Yeh's opposition argued only that the six-year limitations period for fraud and declaratory relief applied. A-93-A-106.

In October 2019, the court denied the motion on the ground that the Cross-claim raised an issue whether Su was estopped from relying on the Statute. A-115-A-116.[4] Notably, the court ruled that the Statute had run whether the alleged conversion occurred in 2007 or 2014—the two possible dates derived from the Cross-claim—and that neither the Statute for fraud or for declaratory relief applied.

---

[4] The court found that the parties agreed that New York law applied to all aspects of the case. A-111; A-314.

8

The court based its decision on the ground that estoppel can be based on mere concealment of the alleged wrong. In reaching that decision, the court did not rely on any argument by Yeh or on any case he cited, but only on its own arguments and only on cases its own research produced:

> There are factual questions raised in the pleadings as to what Su knew about Yeh's rights, when Yeh discovered that Su possessed the Vessel, what motivated Su's curious approach to this dispute, and what caused Yeh's delayed entry into this case, all of which would be relevant to assessing Su's statute-of-limitations defense and any claim by Yeh to equitable estoppel.

The court did not cite to any allegation in the Cross-claim that raised those "factual questions" or how any such fact would be relevant to Su's defense as opposed to Yeh's unpled estoppel.[5]

b. Summary judgment.

Su's summary judgment motion was based on the ground that no material issue of fact existed as to estoppel because Yeh had not proffered admissible evidence as to the necessary elements of that claim and that the Statute therefore entitled Su to judgment as a matter of law. A-117-A-118. The gist of the motion was

---

[5] In a footnote (A-88, n. 4), Yeh had stated that "…equitable tolling based on fraudulent acts may also apply that is likely only determined through discovery." The court, however, did not refer to that footnote.

9

that Yeh had not met his burden under New York law of offering evidence of any misrepresentation by Su during the limitations period, of his reliance on any misrepresentation, or of his diligence in suing. Yeh's opposition relied solely on an alleged conspiracy to conceal the conversion.

The district court denied Su's motion on the ground that triable issues existed as to whether Su had engaged in "affirmative acts of concealment" and whether Yeh had acted diligently to sue after he became aware of the material facts. A-218, A-224.

### 3. Trial

In June 2022, the court conducted a seven-day bench trial. The court rendered its decision in an "Opinion and Order" dated October 24, 2022. A-310-A-351. The court held that Su was estopped from asserting the Statute and that Su had converted Yeh's interest in the Vessel, but it dismissed Yeh's claim for declaratory relief.

The court found that Yeh had not briefed or made arguments about his remedies. A-348. Nevertheless, the court ordered the parties to conduct settlement discussions and, if a settlement could not be reached, to propose a briefing schedule on remedies. A-351.

### 4. Post-Trial Proceedings

When the parties failed to settle, the court ordered briefing on remedies, including whether the court should order that the Vessel be sold at auction. SPA-5-

10

SPA-9. Again, the court *sua sponte* proposed the sale remedy and provided Yeh with case citations. On February 7, 2024, the court issued its "Order and Judgment," SPA-1-SPA-15 (the "Judgment"), which held that Yeh had not proved a right to damages but nevertheless ordered that the Vessel be sold at auction and that the proceeds be distributed equally.

This appeal followed. On April 24, 2024, the district court ordered that the case be stayed pending resolution of this appeal. A-376-A377.

## STANDARD OF REVIEW

The standard of review for each of the issues on this appeal is *de novo*. *Am. Soc. for Prevention of Cruelty v. Animal and Plant Health Ins. Serv.*; 60 F.4th 16, 21 (2d Cir. 2023) (review of denial of motion for judgment on pleadings); *Loomis v. Ace American Ins. Co.*, 91 F.4th 565, 572 (2d Cir. 2024) ("We review without deference the district court's grant of summary judgment…"); and *Salve Regina College v. Russell*, 499 US 225, 231-32 (1991) (review of district court determination of state law). *De novo* review is review without deference. *Id.* at 238 ("When *de novo* review is compelled, no form of appellate deference is acceptable."); *Zervos v. Verizon New York, Inc.*, 252 F.3d 163 (2d Cir. 2001) ("When we review a district court's decision *de novo*, we take note of it, and study the reasoning on which it is based. However, our review is independent and plenary; as

11

the Latin term suggests, we look at the matter anew, as though it had come to the courts for the first time.")

## SUMMARY OF ARGUMENT

**I. Judgment on the Pleadings**. The court erred as a matter of law in (i) not applying New York law which required Yeh to plead each element of estoppel because the allegations of his Cross-claim unambiguously showed that the alleged conversion was time-barred, (ii) in taking into account arguments made only in Yeh's opposition to the motion, and (iii) not determining that Yeh's claim was "plausible."

**II. Summary Judgment.** The court also erred as a matter of law in denying Su's motion for summary judgment. A-211-A-226. The error was three-fold:

A. The court erred as a matter of law in holding that "acts of affirmative concealment" by or on behalf of Su could estop him from asserting the statute. New York law is settled that concealment gives rise to an estoppel only when a confidential or fiduciary relationship exists between the parties.

B. Even if "active concealment" was sufficient, the court erred as a matter of law in denying the motion because Yeh offered no admissible evidence that raised a triable issue on concealment. It is undisputed that Su and Yeh were strangers, and mere co-ownership of the Vessel did not create either a confidential or fiduciary

12

relationship. The court did not cite any material fact of "affirmative concealment" on which Yeh relied in not suing before the Statute ran.

C. There was no admissible evidence that Yeh was misled after he learned of Su's consignment in November 2014. His knowledge ended any "estoppel conditions," so the Statute ran, regardless of when a conversion occurred, no later than 2017. The court erred, in other words, in ignoring Yeh's own documentary evidence that he was aware that Su was the consignor of the Vessel in 2014. The court ignored New York clearly holding that a tort victim need not know both the alleged tortfeasor's identity and his location before the period of reasonable diligence begins to run.

**III. Estoppel at Trial.** The court erred as a matter of law by holding after trial that Yeh had proved estoppel. The court held that Su's conversion occurred in 2007 when he bought the Vessel. Therefore, the Statute ran in 2010. But the court failed to cite any grounds for estoppel during that three-year period. Instead, it inexplicably held that the relevant period was 2007 to 2019. Even if that were true and even without considering admissibility or weight of testimony proffered by Yeh, the court erred in finding estoppel because Yeh did not establish the requisite confidential or fiduciary relationship necessary for concealment, "affirmative" or otherwise, to support estoppel. Nor did Yeh proffer any proof of reliance or reasonable diligence after November 2014. By failing to point to any evidence of diligence or excuse

13

during the period from 2014 until Yeh filed his Cross-claim in 2019, the court erred as a matter of law in concluding that Yeh had met his burden on reliance and diligence.

**IV. Erroneous Determination of Law of Conversion.** Even if Yeh's claim was not time-barred, the court erred in holding that Su had committed conversion simply by acquiring Zhang's interest. The court's Trial Opinion and its Judgment erred in ignoring settled New York precedent on conversion.

New York law holds that (i) a co-owner has the full right to enjoy the property and to transfer his undivided interest without the consent of the other owner and (ii) interference with the right to possession is the *sine qua non* of conversion. The court's errors of law stem from its interpretation of the Shanghai Judgment, which held that Zhang and Yeh co-owned the Vessel and that Zhang had the sole right of possession until it was sold.[6] That judgment created the highly unusual situation where Yeh and Zhang were co-owners but Zhang had the sole legal right of possession. Unusual or not, under settled New York law Zhang had a right to sell *his* interest (including his right to possession) to Su, whether or not Yeh knew or objected. To the extent Zhang purported to sell 100% of the Vessel, *Zhang* may have committed conversion, but *Su* did not. Therefore, under New York law and the

---

[6] The court held that the parties were bound by the Shanghai Judgment. A-321. Su does not contest that holding for purposes of this appeal.

Shanghai Judgment Su, as transferee of Zhang's interest, could not be liable for conversion of Yeh's interest simply by possessing the Vessel or by attempting to sell it.[7]

The court also erred as a matter of law in misconstruing the Shanghai Judgment to the effect that Yeh regained a right to possession when the Vessel was not sold in 2007; and the court further erred in ignoring New York law that differentiates a right to possession from actual possession by co-owners. In short, even if the court's reading of the Shanghai Judgment was correct, New York law requires the conclusion that no right of Yeh to possession was affected, so Yeh's remedy was not conversion. Yeh simply sought the wrong remedy. He could have sued to establish his 50% ownership or to partition the interests in the Vessel. He did neither, and the court erred as a matter of law in holding there was a conversion.

**V. Forced Sale.** Finally, the district court erred as a matter of law in holding that New York law permitted a forced sale of the Vessel with the proceeds to be distributed equally. This error was three-fold.

A. The court erred in holding that Yeh had a right of possession equal to Su's. That error resulted from unfounded addition to the Shanghai Judgment to the effect

---

[7] Under New York law, Zhang did not have the power to transfer Yeh's rights in the Vessel, so Su never acquired those rights and could not sell them even if an auction was consummated. *See,* Part IV, *infra.*

that Zhang's right of possession ended in 2007. The court erred in relying on that erroneous construction as a basis to order a forced sale.

B. Yeh conceded in his remedies briefing that the sole remedy for conversion under New York law is damages; and the court properly held in the Judgment that Yeh failed to prove damages. Neither Yeh nor the court cited a single case, in New York or elsewhere, which upheld a forced sale of a converted good as a remedy for conversion. The only cases cited involved marital or other situations where the court has undisputed statutory or equitable powers to order a sale. New York law would permit a sale in the present circumstances only if Yeh sought partition, but he did not.

C. Even if a forced sale were an available remedy, the court erred as a matter of law in ordering an equal distribution of proceeds. Yeh failed to meet his burden of proving the value of the Vessel or of the value of the parties' relative rights. Indeed, he offered no evidence on either issue. The court's order to distribute proceeds equally was inconsistent with the Shanghai Judgment, and therefore New York law on collateral estoppel, and with New York law on damages.

## ARGUMENT

### I. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN NOT GRANTING JUDGMENT ON THE PLEADINGS.

Yeh's Cross-claim alleged that his claim for conversion accrued more than three years before filing because the only specific wrong he alleged was the consignment to Sotheby's in 2014. A-145 ¶¶22-23, A-147, ¶29, A-149 ¶44. It was therefore *prima facie* barred by the Statute.

After answering the Cross-claim, Su moved for judgment on the pleadings. A-70-A-71. In deciding the motion (A107-A-116, the "12(c) Opinion"), the court properly held that New York's Statute applied and that a Rule 12(c) motion based on the Statute may be used to dismiss a claim if the defense appears on the face of the complaint. A-110. The matter should have ended there, and the motion should have been granted.

The court, however, denied the motion because:

> Yeh's *arguments* that Su *purposely concealed his possession of the Vessel from Yeh*, such as by *failing to name Yeh in the Chinese quiet-title action*, *refusing to participate in mediation, and declining to name Yeh in this action*, thereby preventing Yeh from learning about Su's conversion, *may be relevant to an equitable estoppel argument.*
>
> …At this juncture, there are factual questions raised in the pleadings

17

as to what Su knew about Yeh's rights, when Yeh discovered that
Su possessed the Vessel, what motivated Su's curious approach to
this dispute, and what caused Yeh's delayed entry into this case, *all
of which would be relevant to assessing Su's statute of limitations
defense and any claim by Yeh to equitable estoppel*. [Citation
omitted.] *Because of the potential equitable estoppel argument, the
Court cannot conclude that Su's affirmative defense of untimeliness
clearly prevails on the face of the pleadings*.[8]

A-116 (emphasis added). Significantly, the Opinion does not address the elements
of estoppel under New York law, but simply cited *Farkas v. Farkas*, 168 F.3d 638,
644 (2d Cir. 1999), which addressed estoppel after a trial and not at the pleading
stage.

The denial of the motion erred in applying governing law.

*First*, the court erred by ignoring the requirement that Yeh plead with
specificity each element of estoppel. *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d
Cir. 2015) ("When a plaintiff relies on a theory of equitable estoppel to save a claim
that otherwise appears untimely on its face, the plaintiff must specifically plead facts

---

[8] While not material to this appeal, Su's Memorandum of Law in support of his Summary
Judgment Motion answered each of these questions on the basis of undisputed facts. Dkt. 156-2/7-
9.

that make entitlement to estoppel plausible (not merely possible)." [Citations omitted.]) *See also, Twersky v. Yeshiva Univ.*, 993 F.Supp.2d 429, 442, n. 5 (S.D.N.Y. 2014), *aff'd*, 579 F.App'x 7 (2d Cir. 2014) ("Federal courts follow New York law in requiring a plaintiff to plead each element of equitable estoppel with particularity. *Abercrombie* [*v. Andrew Coll.*], 438 F.Supp.2d [243] at 265 [(S.D.N.Y. 2006)] ('[W]ithout adequate pleading, [equitable estoppel] is not properly raised and therefore cannot defeat a motion to dismiss based on Statute grounds.' (citation omitted)….")

*Smith v. Smith*, 830 F. 2d 11, 12 (2d Cir. 1987), which rejected a claim that the defendant was estopped from asserting the Statute, lists the elements of estoppel that must be pled:

> The elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position…."

19

New York cases similarly require a plaintiff allege "affirmative wrongdoing by the defendant" and plaintiff's own "reasonable reliance" for estoppel. *Zumpano v. Quinn*, 6 N.Y.3d 666, 673-674 (2006).

Here, the court erred because there was no *allegation* of affirmative wrongdoing or of reasonable reliance or of any of the other elements listed in *Smith v. Smith*. Instead, it referred only to a "*potential argument.*"[9]

*Second*, even if the court had cited the proper standard, no allegations of the Cross-claim supported estoppel. The Cross-claim did not allege or even infer that Su engaged in any affirmative wrongdoing, or even "concealment," after the alleged conversion in 2014. Indeed, the court agreed: "In this case, Yeh has not pleaded any fraudulent statements or omissions on which he (or even Zhang) relied" (A-115). Moreover, the only post-2014 event mentioned in the Cross-claim is a 2015 quiet

---

[9] That phrase may have referred to the only even-remote assertion by Yeh to equitable estoppel: Footnote 4 in his Memorandum of Law in opposition to the 12(c) motion (A-88, n. 4) stated:

> Yeh's assertion that his conversion claim is subject to a six-year Statute under CPLR § 213(8) and yet equitable tolling based on fraudulent acts may also apply that is likely only determined through discovery. Under New York law, "[a] defendant/wrongdoer cannot take affirmative steps to prevent a plaintiff from bringing a claim and then assert the Statute as a defense." *Zumpano v. Quinn*, 6 N.Y.3d 666 (2006).

Even if that footnote had been pled, it was not sufficient to satisfy the pleading standard of *Thea v. Kleinhandler, supra.*

20

title action Su brought against Zhang (A-56 ¶¶35-40), but the Cross-claim does not even imply that there was anything wrongful about that action or that it delayed Yeh from filing an action. Instead, the only allegation is that the action had no effect on the parties' rights. *Id.*, ¶40. In short, no allegation of the Cross-claim supported estoppel.

Instead, Yeh's only reference to "fraudulent acts" was in his opposing brief (A-85-A-87, A-89-A-90), which contained numerous citations to hearsay documents previously filed in the docket. But, even if those matters had been included as allegations in the Cross-claim, they could not have met the requisite pleading standard because Yeh's opposition conceded that those "fraudulent acts" were part of the alleged conversion and not post-tort acts giving rise to estoppel: "Here, Su's fraudulent acts against Yeh's co-ownership claim are the sole basis of Yeh's conversion claim and are therefore timely." A-88. That was not sufficient. *Ross v Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491-492 (2007) (there must be a "later fraudulent misrepresentation….").

*Third*, even if the Cross-claim had included the necessary specific allegations, the court erred in not applying the proper "plausibility" standard. *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) ("To present a plausible claim, the 'pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.' *Bell Atlantic Corp. v.*

21

*Twombly*, 550 US 544, 550 (internal quotation marks omitted)"; *Thea v. Kleinhandler*, *supra*. The 12(c) Opinion's statements, *supra*, that "Yeh's *arguments* that Su concealed his possession of the Vessel *may be relevant* to an equitable estoppel *argument*" and that the enumerated "facts" would be *relevant* to "assessing Su's statute-of-limitations defense and *any* claim by Yeh to equitable estoppel," and its explicit acknowledgment that the estoppel argument is "potential" all demonstrate that the court erred by denying the Motion when Yeh had failed to show estoppel was a plausible claim.

## II. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN NOT GRANTING SUMMARY JUDGMENT.

The only issue presented by Su's motion for summary judgment was whether triable issues existed such that Yeh could establish at trial that Su was estopped from asserting the Statute. A-117-A-118. Yeh opposed the Motion with his Declaration (A-142-A-160) and exhibits attached thereto.[10]

The district court denied the motion, finding that there were triable issues of fact as to whether (i) Su engaged in "affirmative concealment" and (ii) Yeh acted

---

[10] Yeh also offered a Declaration by his lawyer. The Court stated, however: "The Court did not rely on the substance of Mo's declaration to find that significant disputes of material fact warrant denial of summary of judgment." A-226. Su objected to the admissibility of virtually all of Yeh's assertions of fact (Dkt. 175), but the SJ Opinion did not address any of those objections.

22

with sufficient diligence in bringing suit. A-211-A-226 (the "<u>SJ Opinion</u>"). As to the former, the SJ Opinion recognized that New York law required Yeh to (i) articulate particular affirmative wrongdoing by Su that prevented timely filing of an action (A-215) and (ii) show that he brought the action within three years after the wrongdoing stopped. A-217-A-218.

**A.      The Law Relevant to the Motion.**

As part of the SJ Opinion, the court provided what it later described (A-326, n. 36) as "its detailed legal analysis" of estoppel. That analysis will be addressed in Part III *infra* with respect to the court's trial opinion. For present purposes, it will be sufficient to discuss just a few precedents.

**1. The requisite wrongdoing and reliance.**

New York law specifically addresses the type of wrongdoing that can give rise to estoppel and of the need for a plaintiff to prove reliance on that wrongdoing in not bringing a timely action. For example, in *Zumpano*, *supra*, the Court of Appeals held, at 674-75 (citations omitted):

> Thus, this Court has held that equitable estoppel will apply "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (citation). Moreover, the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations (citation).
> It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by

23

> defendants somehow kept them from timely bringing suit (citation). Plaintiffs have failed to satisfy this burden. …
>
> It is not enough that plaintiffs alleged defendants were aware of the abuse and remained silent about it. … A wrongdoer is not legally obliged to make a public confession, or to alert people who may have claims against it, to get the benefit of a statute of limitations.

To the same effect is *Corsello v. Verizon NY, Inc*., 8 N.Y.3d 777, 789 (2012):

> [I]n cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, we have held that the defendants were not estopped from pleading a statute of limitations defense (Ross v Louise Wise Servs., Inc., 8 NY3d 478, 491-492 [2007] [there must be a "later fraudulent misrepresentation... for the purpose of concealing the former tort"], citing Zumpano v Quinn, 6 NY3d 666, 674 [2006] [it is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit"]). Plaintiffs here have not alleged an act of deception, separate from the ones for which they sue, on which an equitable estoppel could be based.

*See also, Smith v. Smith, supra* at 22 (stating elements of estoppel).

## 2. Diligence.

The second set of cases addresses the requirements that a plaintiff prove diligence in suing once he is on inquiry notice of a potential claim. Many cases

address the requisite element of diligence. This Court's recent decision in *Koral v. Saunders*, 36 F.4th 400, 409 (2d Cir. 2022) is one:

> But it is not enough to have been misled or defrauded. The plaintiff must demonstrate her diligence in seeking the facts [citations omitted.]
>
> ***
>
> In sum, Lisa failed to investigate Gregg's assurances that his real estate investments were worth nothing, notwithstanding warning signs and ample opportunity to do so during the divorce proceedings. "Equitable estoppel will not toll a limitations statute ... where a plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations." *Gleason v. Spota*, 194 A.D.2d 764, 599 N.Y.S.2d 297, 299 (2d Dep't 1993) (internal quotation marks and citation omitted).

*Putter v. No. Shore Univ. Hosp.*, 7 N.Y.3d 548, 552-53 (2006), is another example. There the Court of Appeals declined to recognize estoppel even where the chief of infectious diseases at the hospital falsely told the plaintiff that the plaintiff's disease was of unknown origin. The Court held as a matter of law that the misrepresentation was not sufficient for estoppel because "given [the plaintiff's] level of awareness" of his injury and its likely source, he "had sufficient information available to require him to investigate whether there was a basis for a medical malpractice action." *See also, Baier v. Baier*, 191 A.D.3d 401, 402 (1st Dept. 2021)

25

(dismissing a claim based on the Statute because alleged transactions during limitations period were sufficient to put the plaintiff on inquiry notice of the possibility of fraud. Mere ignorance or lack of discovery of the wrong is insufficient to toll the Statute.)

**B.    The Facts Relied on by the Court As to "Concealment" Were Not Material Under New York Law.**

Given this governing law, the court erred as a matter of law in concluding there were triable issues. "On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health*, 746 F.3d 538, 544 (2d Cir. 2014) Therefore, any evidence of "concealment" that was not relevant to proving "affirmative wrongdoing" by Su on which Yeh reasonably relied (within the meaning of the New York cases cited above) could not address a "material issue."

In evaluating materiality, it is essential to connect the dots between the alleged conversion and an alleged concealment. When the motion was filed, Yeh had not articulated the acts that constituted conversion. As the 12(c) Opinion stated, there were two possibilities: (1) Su's acquisition of the Vessel without Yeh's consent in

2007 or (2) Su's consignment to Sotheby's in 2014.[11] Taking both the definition of materiality and the required nexus between tort and concealment, it becomes apparent that the court failed to apply the correct legal standard in identifying its seven "triable issues" (A-218-A-221):

1.      "First, Yeh alleges that Su and Wang stripped the Vessel of its identifying origins by transporting it between Hong Kong and Shanghai to create false customs declarations forms…. While this evidence may not be sufficient to prove deceit at trial, it is some evidence of skullduggery that can support Yeh's claim of active concealment." A-218.

—This could not be a material fact because Yeh had the obligation to show that Su's "concealment" caused him not to file suit. Nowhere in the SJ Opinion did the court make any connection between transporting and any delay in filing suit. There was no indication in Yeh's Declaration that, with or without the alleged wrongdoing, he would have had any knowledge of the whereabouts of the Vessel or its ownership. Yeh's rhetorical flourish terming transporting the Vessel as "stripping" cannot, therefore be material to estoppel. Nor is "skullduggery" in and of itself

---

[11] As demonstrated below in Part IV, regardless of the estoppel issue, neither event constituted conversion under New York law. The court noted (A-327, n. 32) that Yeh contended at trial that Su's conversion was in 2007.

sufficient to create a triable issue of estoppel unless to it is added the other elements of estoppel. *Smith v. Smith, supra.*

2.     Second, Yeh claims that a statement allegedly signed on October 30, 2014, by Zhang as proof of Su's ownership of the Vessel is "suspect on its face" and conceals the true ownership of the Vessel…. A genuine issue of material fact remains whether Zhang is the true author of this statement and whether Su knowingly used a falsified document to further conceal the alleged conversion. Accordingly, the submission of the statement with such obvious inaccuracies and misleading information constitutes an act of concealment." A-218-A-219.

—This fact cannot be material because the court cited no evidence that the statement was provided to Yeh during any estoppel period or that it influenced him not to sue. If the statement is cited to support estoppel as to the 2007 conversion, it was too late because it was delivered after the Statute had run. If it is cited to support estoppel with respect to a 2014 conversion, it could not be evidence of "concealment" that caused Yeh not to sue before 2017. Indeed, the court's reference to it the statement being "suspect" to Sotheby's demonstrates that it (1) was part of any conversion that occurred by consignment and (2) it had exactly the opposite effect from harming Yeh. Moreover, it could not be connected to any wrongdoing on which Yeh relied, because Yeh's Demand Letter shows that a month later (November 2014), Yeh knew that Sotheby's had the Vessel and that Su claimed

28

ownership. So even if the statement constituted "concealment," Yeh could not have reasonably relied on it to delay suit until after the Statute ran.

3.     "Yeh alleges that Chongyuan Art Auction Company ("Chongyuan"), a Shanghai auction house that had initially tried to auction the Vessel in late 2005 and early 2006, collaborated with Su to further an elaborate concealment scheme…. While Chongyuan's role in furthering Su and Wang's alleged concealment scheme (and in the alleged conversion itself) remains far from proven, when the facts, including that Chongyuan did not respond to Yeh's requests for information about the Vessel, Yeh Decl. (Dkt. 170) ¶¶ 46, 57, are evaluated in the light most favorable to Yeh, there are questions of fact whether Chongyuan was part of a scheme to conceal Zhang's conversion." A-219-A-220[12]

—This cannot be a material fact because "whether Chongyuan was part of a scheme" could be relevant only if Yeh had proffered admissible evidence to support a finding that he would have filed suit if he had been aware of some omission of information (concealment) as a result of the "scheme." The court cited no such evidence. Precisely to the contrary, the only reasonable inference is that any knowledge of a scheme relating to an auction in 2011 or in 2014 would not have

---

[12] Notably, the paragraphs in Yeh's Declaration to which the Opinion cites do not include any reference to Su, but only to Zhang and Chongyuan. That may explain the court's reference to "Zhang's conversion," which could not be relevant to Su's liability.

elicited any different response than Yeh's Demand Letter, which was no action at all. Moreover, even if Su was in cahoots with Zhang and Chongyuan, all Yeh complains about is their failure to respond to his inquiries, which is "mere silence," which *Zumpano, supra*, says cannot be a predicate for estoppel.

4.      "[I]t is undisputed that Su would not permit Sotheby's to share his identity with Yeh…." A-220.

—This cannot be a material fact because, again, it is nothing more than the "silence" which *Zumpano* found to be insufficient as a matter of law to create estoppel. In any event, Yeh did find out Su's identity through Sotheby's and did nothing about it during the limitations period.

5.      "[I]nexplicably, Su did not include Yeh in a 2015 quiet title action he brought against Zhang in the Henan Luoyang Intermediate People's Court in China…" A-220-A-221.

—"Inexplicable" or not, this cannot be a material fact under *Zumpano* because it did not conceal anything from Yeh except in the sense that Su was silent in not disclosing the action. And it is no more "inexplicable" than Yeh's failure to sue after his Demand Letter.

6.      Su and Wang did not name Yeh as a defendant when they brought this action in June 2017. A-221.

30

—This is just more silence. The action against Sotheby's was for breach of a contract to which Yeh was not a party and for replevin because Su clearly had a superior right to possession over his consignee. The court's conclusion is not supported by any citation or reasoning that would impose a duty on an alleged tortfeasor to bring an action against his alleged victim.

7.      "Yeh contends that Su's attorney, Xuejie Wong, ignored Yeh's email, allegedly sent on November 13, 2018, claiming co-ownership of the Vessel and offering to negotiate a settlement. A-221."[13]

—This is not material because (1) it is just more silence and (2) it is irrelevant because the Statute had already run. Even if concealment was the proper standard, this fact could have been material only if Yeh had also shown that other acts created "estoppel conditions" and had carried beyond the statutory period. He did not.

## C.      The Court Erred in Denying the Motion Because Yeh's Demand Letter Established His Lack of Reliance and Diligence.

Even if any of the above facts cited by the court was material in the abstract, none could be material in light of Yeh's Demand Letter, which Yeh proffered in opposition to the summary judgment motion. That letter to Sotheby's counsel's,

---

[13] The court ultimately concluded after trial that Yeh had not proved allegations 2 and 7.

dated November 7, 2014, and written by his counsel, Correct Law, included the following statements.

> This letter is issued pursuant to the instructions given by our client, Mr. Yeh Yao Hwang.…
>
> 2. In light of the above, we are instructed by our client (hereunder referred to as "I," "me" or "my") to state the following:
>
> ***
>
> (2) …*However, all previous letters from Sotheby's indicate that the ... existing Consignor is not Mr. Zhang Shen Bao but*, according to the enclosed Chinese translation of the letter dated 23 October 2014, *appears to be Mr. Su Wei.…*
>
> (3).…In such event, as [the Vessel] is currently in the possession of Sotheby's, the same is a possessor per se and shall bear the legal liability arising thereof. In such regard, if I am unable to acquire information in relation to the validity of consignment by the existing Consignor which results in my inability to ascertain whether such consignment is legal or not, *I will join Sotheby's to be a co-defendant of the litigation proceedings for determination of the title thereof.* In such event, I will apply for a Court order for ordering Sotheby's to disclose the relevant information of the Property…. As I have no available means to liaise with the existing Consignor, I have no alternative but to join Sotheby's to be a co-defendant in such event. I hope you understand any such action is unavoidable.
>
> (4) …*However, I will exhaust all possible legal means to safeguard my ownership rights in [the Vessel].*

32

A-156 at ¶72 and A-165-A-167, emphasis added.

The court rejected the materiality of this Letter, characterizing it as only giving Su's name. A-222, n. 8.[14] That characterization is factually incorrect, given Yeh's threat to sue. More fundamentally, under New York law, as the cases cited in Part II A above and in Part III demonstrate, it would not be up to a jury to decide if Yeh had the information he needed to serve Su. Under the law, the material issues were not what the information Yeh *had* at the time of his letter, but whether he relied on any earlier "concealments," whether he was on inquiry notice, and whether he acted diligently in filing suit. Given the undisputed admissions in Yeh's Demand Letter, the answer to each such issue is No as a matter of law.

*First*, as to the reliance element of *Zumpano*, *Corsello* and *Smith* (requiring a wrongful act that "somehow kept [plaintiffs] from bringing suit"): The SJ Opinion does not address the reliance requirement, but it is indisputable that Yeh could not reasonably rely on his lack of knowledge arising from any "scheme of concealment" at any time between 2007 and 2014 once he knew of the consignment to Sotheby's and Su's involvement as consignor.

---

[14] "Su argues that Yeh knew his name in November 2014 and therefore had all the information he needed to file suit. Su Reply (Dkt. 174) at 8-9. But a jury could easily reject that argument. In November 2014, Yeh had a name (Su Wei) but no further identifying information. Without further identifying information, service of process would have been difficult."

*Second*, as to Yeh's duty of diligence: The Opinion rejected Su's contention that Yeh did not act diligently when he failed to sue within three years after learning of the consignment and Su's identity as consignor. The Opinion instead accepted Yeh's contention that "the estoppel conditions did not conclude until March 2019 when 'Defendants' identities were revealed including a means to contact them was known.'" The Opinion concluded on this point, "Who became aware of what when is in clear dispute, further demonstrating that summary judgment is improper." A-223-A-224.

As *Koral v. Saunders* and *Putter*, *supra* at Part II A. demonstrate, Yeh's admissions in his Demand Letter require a holding as a matter of law that none of the post-November 2014 facts relied on by the court could be material under New York law. The material issue as to diligence is not whether Yeh had *all the information*, he needed to file a lawsuit for conversion, but whether he had sufficient information to cause him to inquire further. One cannot imagine a better roadmap for inquiry than Yeh and his lawyers described in Yeh's Demand Letter. Yeh's letter shows that Yeh not only had Su's name, but he knew that Sotheby's had the Vessel and how to get more information. He threatened to sue Su and Sotheby's ("co-defendant") for conversion, which would have given him all the information he needed to serve Su. And all this happened while he had almost the entire limitations period to act. But he did nothing—no reliance and no diligence.

34

The court's "who, what, when" conclusion therefore erred as a matter of law in finding a triable issue as to reliance and diligence and in denying Su's motion for summary judgment.

## III. THE TRIAL OPINION ERRED IN HOLDING THAT "AFFIRMATIVE CONCEALMENT" WAS SUFFICIENT TO SUPPORT ESTOPPEL AND THAT YEH ACTED DILIGENTLY.

The court's error-filled path down the estoppel road continued through trial. Its decision finding estoppel and holding Su liable for conversion (A-310-A-351, the "Trial Opinion") included numerous errors of law which require reversal and dismissal of Yeh's Cross-claim.[15] The first part of the Conclusions of Law addressed the merits of Yeh's conversion claim. The court held that Su converted Yeh's fifty percent ownership interest in the Vessel when he purchased and took possession from Zhang in 2007. A-326-A-328.[16] From there, the Opinion proceeded to address the estoppel claim. We will address the conclusions as to estoppel first and then those

---

[15] Su does not attack any of the findings of fact in the Trial Opinion, but only the "Conclusions of Law."

[16] The Trial Opinion also concluded that Wang converted the Vessel in 2014. But that conclusion is moot because ultimately no relief was awarded against Wang.

as to conversion because the estoppel issues were the subjects of the dispositive motions.

**A.     Errors as to "Affirmative Concealment": No Acts During the 2007-10 Estoppel Period.**

The court began its analysis of estoppel by correctly holding that Yeh had the burden of proof. A-337. But then it erred in concluding as a matter of law that even though Su had converted the Vessel in 2007, the relevant period for estoppel was 2007 to 2019. The court did not hold that Su had converted the Vessel twice. Instead, it simply ignored the distinction between acquisition and later consignment for purpose of auction—and held, "Because the period between the accrual of the conversion claim against Wang and the filing of Yeh's claim (2014-2019) is subsumed in the pertinent period with respect to the conversion claim against Su (2007-2019), the Court does not separately address the two periods of time." A-329, n. 37.

With all due respect, this *non sequitur* has no basis in New York law. As noted above with respect to the SJ Order, New York clearly requires that any wrongdoing must at least start during the limitations period—here, between 2007 and 2010. The period may continue longer, but only if the claimant proves that any wrongdoing was sufficiently continuous to cause him not to file despite diligence. Therefore, the occurrence of another conversion by someone else seven years later could not in and

36

of itself extend the "estoppel period," and the Trial Opinion cites no authority or facts that suggests it could.

Based upon that fundamental error as to the relevant "estoppel period," the court summarized its conclusion as follows:

> At trial, Yeh argued that Su and Wang colluded with Zhang, Szutu, and several other individuals associated with Chongyuan…in an elaborate scheme to conceal their conversion of the Vessel.…The Court concludes that Yeh has proved by a preponderance of the evidence that a concealment scheme existed and was active from 2007 to 2018. As described in detail below, Yeh has proved that, despite knowing about Yeh's fifty percent interest in the Vessel, those involved in the scheme colluded to convert the Vessel and to attempt to sell the Vessel, first at Chongyuan and then at Sotheby's, and the members of the scheme actively concealed their actions from Yeh, preventing him from filing his conversion claim in a timely manner.

A-330.[17]

---

[17] The description of the "scheme" as "elaborate" is pejorative; but no matter how "elaborate," the scheme could be material only if it caused Yeh not to sue. No proof was adduced or cited that it did. Likewise, the court's extended analysis of evidence that "members" of the "concealment scheme" were aware of Yeh's interest in the Vessel (A-329-A-333) is immaterial absent proof of any effect of the "scheme" on Yeh.

An examination of the Trial Opinion demonstrates that the court erred as to the materiality of events at or before Zhang's sale to Su in 2007 (A-334). Any such evidence could not be material to estoppel because they were at most evidence of the supposed 2007 conversion itself (*Ross v Louise Wise Servs., supra*; *Koral v. Saunders, supra* at 409) or to a supposedly rigged, but unsuccessful, auction in 2011 (A-334) which did not and could not affect Yeh's rights. That 2011 auction could not be material to a 2007 conversion unless it was part of a scheme that commenced before 2010. *Id*. Yet the court cited no evidence of any connection between any pre-2010 wrongdoing and the 2011 auction. In other words, the Opinion leaps from the 2007 conversion itself to post-Statute 2011 without mentioning a single wrongful act in the limitations period.[18] And then it leaps from 2011 to the 2014 consignment and planned auction, again without any attempt to connect the dots into wrongdoing on which Yeh relied. (A-335-A-338).

The Opinion's next conclusion of law, also erroneous, relates to "active steps [of the "scheme members] to conceal their actions from Yeh." A-334 *et seq*. Again, however, with one exception, all the events the court refers to fall outside the 2007-

---

[18] The court recognized that Su had stored the Vessel at the house of a friend's relative's after his purchase. A-314, n. 11. But to call storing the Vessel in a home "affirmative concealment" would mean that any continued possession of a converted good outside the clear view of the victim would create an estoppel. Nor could Yeh's claims that Zhang and Chongyuan failed to respond to his inquiries amount to "affirmative wrongdoing" in light of *Zumpano, supra*.

2010 estoppel period and are, therefore, immaterial under New York law. That one exception is that Yeh testified that he made numerous attempts to get in touch with Chongyuan from 2007 to 2014 and with Zhang from 2007 to 2018, but that neither party responded to his outreach. A-340. In other words, the only possible basis for estoppel during the relevant 2007-10 period is the silence of persons other than Su.

The entire remainder of the Trial Opinion's conclusions of law as to concealment relate to "collusion" to publicly auction the Vessel in 2014. A-340-A-345. They are immaterial for two reasons (1) because they are part of any 2014 conversion and therefore cannot be a ground for estoppel; and (2), because Yeh's own Demand Letter establishes he did not rely on any "concealment" in not suing until 2019 (*Zumpano*) but instead had all the information he needed to sue in 2014.

In short, even if any or all of the potentially "bad acts" cited by the court (at 31-36) could be material within the required timeframe, none rises to the level of a "subsequent and specific action" or a "later fraudulent misrepresentation... for the purpose of concealing the former tort" (*Zumpano*) that could have kept Yeh timely bringing suit.

### B. The Authority Cited by the Court Does Not Support Its Conclusions of Law.

The Trial Opinion justified its legal conclusions by citation to *Farkas v. Farkas*, *supra*, on which it relied in denying the 12(c) Motion. To the court, *Farkas*

stands for the rule that "concealment" is a sufficient predicate for estoppel. But this Court has rejected that distinction. In *Karol v. Saunders, supra*, at 409, the Court stated:

> New York courts and the courts of this Circuit variously use the terms "fraudulent concealment," "equitable tolling," and "equitable estoppel," not always with clear delineation. See *Pearl v. City of Long Beach*, 296 F.3d 76, 81-83 (2d Cir. 2002) (explaining the varying uses of terminology). And Lisa casts her argument largely in terms of a distinction between active and passive concealment. The terminology is a distraction. Federal district courts in this Circuit sometimes differentiate between active and passive concealment when considering a claim of fraudulent concealment, see, e.g., Bennett Silvershein Assocs. v. Furman, No. 91 Civ. 3118, 1997 WL 531310, at *5 (S.D.N.Y. Aug. 28, 1997); but the New York cases do not invoke such a distinction. Because Lisa alleged state law claims, we look to New York state cases.

In any event, *Farkas* is easily distinguished because the Trial Opinion cites no facts at all analogous to *Farkas*'s "charade of loans" between husband and mother-in-law to disguise the husband's conversion of his wife's interest in marital property. Here, at most was a failed auction in 2011 and an attempted auction in 2014, neither of which changed the *status quo* of the parties' co-ownership, and both of which could, by definition, only be consummated in public. Unlike the situation in *Farkas*, Su did not sell the Vessel; and there were no proceeds to disguise. Nor was there any

40

confidential and familial relationship (the traditional basis for a duty to disclose) between Yeh and Su as there was among the husband, wife, and mother-in-law. And finally, even if Su could be deemed to have "concealed" his ownership when first causing the Vessel to be consigned to Sotheby's, nothing was concealed from Yeh after November 2014.

The court also erred in relying on *Farkas* because that case relied on two New York precedents which no longer reflect New York law, as stated in *Zumpano* and *Corsello*, *supra*. Specifically, *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 127-128 (1966), involved "affirmative wrongdoing" by an employee who concealed her embezzlement from her employer in a manner that kept her employer from discovering the crime. Here, unlike the defendant in *Chiappa*, Su had no fiduciary duty to Yeh; and Su did nothing affirmative to conceal his rightful ownership from Yeh during the limitations period. Similarly, the statement in *Smith v. Cutson*, 188 A.D.2d 1034 (4th Dept. 1992), which the *Farkas* court cited as establishing "intentional concealment" as sufficient for estoppel, was mere *dicta*; the court actually held that the plaintiff could not prove estoppel because he had learned the defendant's identity during a deposition and did nothing to pursue a suit until after the Statute had run. In contrast, Su cited to the court the applicable law: *Kaufman v. Cohen*, 307 A.D.2d 113, 122 (2003) ("The doctrine requires proof that the defendant made an actual misrepresentation or, *if a fiduciary*, concealed facts which he was

41

required to disclose, that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bringing timely action" (citations omitted) (emphasis added)); *Jordan v. Ford Motor Co.*, 73 A.D.2d 422, 424 (4th Dept. 1980). The court erred in ignoring that precedent. *See also, Koral, supra*, at 410, quoting *Kaufman* with approval.

### C.     The Court Erred in Determining New York Law Regarding Diligence.

The Trial Opinion also erred in concluding that the "estoppel conditions" lasted until Yeh learned of the litigation between Su and Sotheby's in 2018. A-347. The Opinion does not cite any precedent to support this conclusion, and in fact it is directly contrary to governing law. As to any 2007 Conversion, the only reference to "diligence" is the statement: "As an initial matter, the Court credits Yeh's testimony that he made persistent efforts from 2007 to 2014 to contact Chongyuan and from 2007 to 2018 to contact Zhang about the Vessel and that neither responded to him." A-345. But Chongyuan and Zhang are not Su, and there is no conclusion of law that they were Su's agents between 2007 and 2010 with respect to Su's co-ownership of the Vessel. Moreover, a "failure to respond" can be nothing more than "silence." To term it "concealment" is, in *Koral v. Saunders*'s terms, a "distraction."

42

The Trial Opinion then jumps to 2014. It cites Yeh's attempts to get information from Sotheby's as though Yeh did not cause his Demand Letter to be sent and as though that letter does not demonstrate the state of Yeh's knowledge. The court erred, therefore, in concluding that the estoppel period ended only when a friend mailed Yeh a copy of the notice Sotheby's published as part of its efforts to serve Yeh.

Implicit in the Trial Opinion's conclusion is that a conversion plaintiff has no duty to pursue information about his potential claim. That is not New York law, as *Koral v. Saunders* demonstrates. This rule is settled. *See, Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (If a plaintiff cannot articulate any acts by the defendant that prevented him from commencing suit within the limitations period, then he has failed to meet his burden of showing that he was wrongfully induced not to commence suit.) Yeh may have convinced the court of "bad acts" by Su, but he offered no evidence that those acts prevented him from suing.

*Santo B. v. Roman Catholic Archdiocese of New York*, 51 A.D.3d 956, 958 (2nd Dept. 2008), drives this point home on facts much more favorable to a claimant than Yeh presented. There, the plaintiff alleged that in 2001 he informed a representative of the Archdiocese of his abuse claim, that the representative denied him information regarding the abuser's location, and after this meeting, that he "reasonably relied" upon the Archdiocese to "promptly investigate [his] claim and

43

make [him] whole." He did not aver specific promises or statements by the defendant's representative which led him to believe that the Archdiocese was investigating his claim, nor did the plaintiff do anything further after this single meeting until four years later, when in 2005, he sued. The court held the plaintiff had failed to establish reasonable reliance upon misrepresentations or conduct of the respondents which prevented him from timely filing. Here, in contrast, no misrepresentations were made to Yeh, and his passive behavior post-Demand Letter cannot create estoppel. Yeh was not diligent as a matter of law.

## IV. THE COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT SU CONVERTED THE VESSEL.

The Trial Opinion and the post-trial Judgment erred as a matter of law in concluding that Su had converted Yeh's interest in the Vessel. In comparison to the limitations and estoppel issues, neither the parties nor the court gave much attention to the ultimate issue of liability for conversion. Yeh's proposed Conclusions of Law (A-252) included only a single paragraph setting out the most general statements regarding the law of conversion. The Trial Opinion's basic statement of the law of conversion reflects this lack of relative attention:

> "Under New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *DeVito v. Neiman*, 548 F. Supp. 3d 314, 317–18 (E.D.N.Y. 2021)

44

> (collecting cases). Accordingly, to succeed on his claim for
> conversion, Yeh must prove: "(1) the property subject to conversion
> is a specific identifiable thing; (2) [Yeh] had ownership, possession
> or control over the property before its conversion; and (3) [Su and
> Wang] exercised an unauthorized dominion over the thing in
> question, to the ... exclusion of [Yeh's] rights." *Id.* (cleaned up).

(A-320). Based on that summary, the court applied the Shanghai Judgment to both
parties on the principle of collateral estoppel. A-322. It is against that backdrop that
the Trial Opinion's conclusions as to conversion under New York law must be
viewed.

### A.  The court's conclusions of law on conversion erred as to New York law on Su's rights as co-owner.

Given the court's holding that substantive New York law governs this case
(A-320), it was essential that the court base its analysis of conversion on New York
law regarding the rights of co-owners. Yeh had the burden of proving conversion,
and he failed to do so. Therefore, both the Trial Opinion and the Judgment erred as
a matter of law.

New York recognizes that ownership of property consists of a "bundle of
rights." *Seawall Assocs. v. City of New York*, 74 N.Y.2d 92, 103 (1989). The right to
possession is the most important of these various rights of an owner (*Id.*), and the
delivery of possession can never be "collateral" to a delivery of title. *Novelty Crystal
v. PSA Inst.*, 49 A.D.3d 113, 117-118 (2nd Dept. 2008). Consistent with this case

45

law, Section 2-403 of the New York Commercial Code establishes the law of transfer:

> (1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased.

Thus, it is indisputable under New York law that Su (a purchaser of goods) acquired all Zhang's interest in the Vessel, including his right to possession.

Second, under New York law, Zhang, as a co-owner, did not require the consent of Yeh to transfer all his rights in the Vessel, including possession. *VRW, Inc. v. Klein*, 68 New York 2d 560, 565 (1986) (Nothing in New York law prevents a co-owner from making an effective conveyance of his or her own interest; each tenant may sell his or her rights in the property, subject to the continuing rights of the other). Nor does anything in the Shanghai Judgment include a consent condition on the parties' co-ownership rights. A-282-A-284.

Third, the right of each owner to the use and possession of the property is precisely the same, and neither can have or exercise a superior authority over the other. *Osborn v. Schenck*, 83 N.Y. 201, 204-05 (1880) ("It follows necessarily that the mere fact of such possession and use by one, even though it prevents the use and possession of the other can furnish no ground of action, since it is rightful, and rests upon a lawful authority.") *See also, Hudson v. Swan*, 83 N.Y. 552, 556 (1881) ("It

46

is the settled law…that replevin will not lie by one tenant in common of a chattel against another for taking the chattel, and if one of them sells his interest to a third party he has the right to deliver the chattel to the purchaser.")[19]

These authorities demonstrate the fundamental error in the court's conclusion that Zhang's transfer to Su and delivery of the Vessel to Su converted Yeh's rights in the Vessel. In short, there could be no 2007 conversion.

### B. The Court Erred in Finding as a Matter of Law That Conversion Occured When Yeh Had No Right to Possession.

Settled New York law also contradicts the court's conclusion that Yeh "can recover on the strength of his own title or right to possession" (Trial Opinion at 12). The authority cited for this conclusion (23 *N.Y. Jur.2d*, Conversion §14) states "Conversion is concerned with possession, not with title. Thus, an action for conversion is generally regarded as a possessory action, the wrong being against possession rather than title." (Footnotes omitted.) One of the cases cited for that proposition, *McCoy v. American Exp. Co.*, 253 N.Y. 477, 482 (1930), involved a claim by a lienholder (a putative owner of one of the rights in the bundle) for conversion against the title owner and her agents. Justice Cardozo held that

---

[19] The court attempted to distinguish *Osborn* and *Hudson* (SPA-5) by citing *obiter dicta* in *Gates v. Bowers*, 169 N.Y. 14, 17 (1901). But the issue of decision in that case was that one whose ownership claim is rejected by a jury cannot claim on lien on the same property.

47

conversion would not lie because one claiming conversion must have had possession or an immediate right to possession at the time of the alleged conversion. Even if the claimant had a lien on the property, that lien was still enforceable and he had not been injured. Justice Cardozo summed up the rule as follows: "There may be wrongs to property interests without violation of a possessory right; there cannot be that specific form of wrong which is known as conversion." *Id*.

In short, Yeh neither had possession nor, under the Shanghai Judgment, the right to possession. Therefore, under New York law he could not sue a lawful possessor (Su) for conversion.

Similarly, the Court's the court erred in concluding as a matter of law that "A purchase of personal property from one not authorized to sell the property constitutes conversion under New York law." A-325. The court's erred in relying on 23 *N.Y. Jur. 2d* Conversion, Etc. § 28 (citing *Newton v. Porter*, 69 N.Y. 133, 136–37 (1877)). That authority deals not with co-owned property, but with stolen property. Section 28 states, "The purchase of personal property from one not authorized to sell it constitutes conversion where, in addition to the act of purchase, the buyer disposes of the goods afterward to a third person." Here, Zhang did have authority to sell his interest in the vessel; and Su, "in addition to the act of purchase," has still not disposed of the vessel. The fact that Zhang did not have the right under New York law to transfer Yeh's interest simply does not matter.

48

In other words, as in *McCoy*, any injury Yeh suffered was not to a right of possession that Su transferred to a third party because Su never transferred the ownership "stick" of possession to anyone. Therefore, Yeh did not prove conversion. See also, *Coleman v. Golkin, Bomback & Co., Inc.*, 562 F.2d 166, 168 (2d Cir. 1977) ("Coleman had no possessory interest in the shares prior to their sale, and without such an interest, he had no claim for conversion").

These authorities demonstrate a fundamental legal error in the Trial Opinion (and in the Judgment): Su as the transferee of a co-owner in possession has himself the right to possession. As a matter of law, Su simply could not convert Yeh's interest by buying Zhang's interest even though Zhang had no power to transfer Yeh's interest. The Trial Opinion, therefore, erred when it concluded "…[Su] converted Yeh's fifty percent ownership interest in the Vessel when he purchased and took possession of it from Zhang in 2007." As §2-403 and the New York cases cited above demonstrate, Yeh's co-ownership interest was simply not affected by Su's acquisition.

Indeed, Yeh finds himself in the same position today as he was from 2005-2007 when he and Zhang consigned the Vessel to Chongyuan: He owns rights in the Vessel, but no right to possession. Yeh has all the rights in the bundle of co-ownership created by his agreement with Zhang, including the right to his portion of proceeds of any sale of his interest. But it does not follow that he has any rights other

49

than those recognized by the Shanghai Judgment—and that Judgment gave the right of possession to Zhang and not to Yeh.

### C. The Court Erred in Finding Conversion When Yeh Failed to Prove Any Harm.

The Judgment also erred as a matter of law in holding (SPA-5, n. 3) that Yeh proved conversion even though Sotheby's did not sell the Vessel. Footnote 3 holds that, because Su was not an "innocent bona fide purchaser," he is liable for conversion because he refused to surrender the Vessel to Yeh or share possession of it with Yeh. In support of this conclusion the court cited its Trial Opinion at 17 and 23 *N.Y. Jur.2d*, Conversion § 28 (2023).[20] The holding that Su, as a non-bona-fide purchaser, converted Yeh's fifty percent ownership interest in the Vessel when he purchased and took possession of it from Zhang in 2007 erred as a matter of law because whether Su was a bona fide purchaser is not relevant to conversion. BFP status matters only for the Statute, not to a transfer of rights, as the Trial Opinion itself held in recognizing Su as a 50% co-owner (A-325, A-328, n. 34) and as §2-403 makes clear. Whether Su knew of Yeh's co-ownership or not when he purchased Zhang's rights, he received whatever Zhang owned, which as a matter of law

---

[20] The Judgment's citation to the Trial Opinion at 19 is not relevant because it relates to Wang's conversion in 2014, which is now moot. The citation to 23 *N.Y. Jur.2d*, Conversion § 28 is addressed *supra* at 50-51.

included both the inherent right of a co-owner to possession and Zhang's sole possessory right under the Shanghai Judgment.

The court's holding also conflicts with the settled doctrine that any tort, including conversion, requires an injury and that there is no such thing as an "attempted tort." *See, e.g., Heffernan v. City of Paterson, NJ*, 578 US 266, 136 S. Ct. 1412, 1421 (2016); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007) (tort requires actual injury); *US v. Stefonek*, 179 F.3d 1030, 1036 (7th Cir. 1999) (not sufficient to show defendant tried to interfere with rights, he must have actually done so; a litigant may not complain about a violation of rights that does not harm the interest… that the rights protect. There are no "attempted torts."); *Restatement (Second) of Torts* § 907 (1977) (careless or even willful behavior is not actionable as a tort unless it causes injury).

In short, the court erred in finding conversion in the absence of a finding of fact that the transfer of Zhang's rights to Su hurt Yeh, and the Trial Opinion makes clear that it did not—his 50% ownership is still recognized, and his interest has not been sold. Su is entitled to possession now, just as Yeh conceded in his pleadings, pre-trial submissions and trial arguments. The Court has held that Yeh has the same 50% interest in the Vessel that he had at the time of the Shanghai Judgment. He did not have possession then and does not now. If Sotheby's delivers the Vessel to Su, as provided in its 2014 consignment agreement, how will Yeh be injured? He won't

51

be: He will still retain all the rights he got under the Shanghai Judgment by which he is bound, and he will still be entitled to sell *his* rights in the Vessel whenever he wants, to whom he wants, and at the price he wants.

Under the Trial Opinion and New York law, either co-owner, Yeh or Su, can sell only their 50% interest. No sale beyond those rights has occurred, and Yeh has never sought possession, partition, or any other right or remedy to change those rights.

## V. THE COURT ERRED IN ORDERING THE VESSEL TO BE SOLD AND THE PROCEEDS DIVIDED BETWEEN THE PARTIES.

Sixteen months after inviting briefing on remedies, the court issued its Judgment denying Yeh's claims for damages but ordering a forced sale of the Vessel with the proceeds to be equally divided. By order dated April 24, 2024, the court stayed the sale pending this appeal.

### A. The Court Erred as a Matter of Law in Concluding That the Shanghai Judgment Gave Yeh a Joint Right to Possession.

Yeh conceded in his Cross-claim and all the way through his proposed findings of fact and conclusions of law that he had no right to possession of the Vessel. Yet the Judgment determined, for the first time after trial, that Yeh had an equal right of possession. SPA-4-SPA-5. The court accomplished this judicial sleight of hand by re-interpreting the Shanghai Judgment and the underlying agreement

52

between Zhang and Yeh to add a term—that Zhang's right of possession expired in 2007:

> Although the Shanghai Judgment recognized that Zhang had the exclusive right of possession under an agreement between Yeh and Zhang dated June 2, 2005 (the "2005 Agreement"), *there is no evidence that Yeh and Zhang intended that Zhang's right of possession would persist if the Chongyuan auction were unsuccessful or if Zhang were to abandon his attempts to auction the Vessel.*… In short, the Shanghai Judgment and 2005 Agreement granted Zhang a limited right of possession pending the Chongyuan auction. That right expired by at least 2007, when Zhang ceased trying to sell the Vessel at the Chongyuan auction and instead sold it to Su without Yeh's knowledge or consent.

*Id.* This feat contradicts both the court's prior holdings and Yeh's repeated admissions: The Trial Opinion held (A-313, A-321) that the Shanghai Judgment awarded Zhang the right to possess the vessel and that the Judgment binds Yeh under the doctrine of issue preclusion. *Id.* at 12. Yeh repeatedly admitted that the Shanghai Judgment gave Zhang the right to sole possession. *See*, A-54/¶13, A-55 ¶26; A-83, A-85; A-240 ¶28; A-263, A-270. Indeed, his Cross-claim specifically alleged that Su had the right of possession at the time of the 2014 consignment. A-55 ¶26. The

Judgment simply ignored these prior rulings and admissions without even a word of explanation.

In light of this history in the case, the court erred as a matter of law in basing its change of heart on the lack of "evidence" that Zhang and Yeh had agreed that "Zhang's right of possession would persist." If anyone had a burden to produce evidence of an implied term of the 2005 agreement or of the Shanghai Judgment, it was Yeh. But Yeh offered no evidence or argument on this point.

The literal, clear, and unambiguous meaning of the words of the Shanghai Judgment, which binds Yeh and which eclipsed Zhang and Yeh's pre-existing agreement, repeatedly states that Zhang has right to possess the Vessel. First, the Judgment describes the holding of the lower, "Original Court": "Zhang Shenbao may keep the disputed bronzeware in his actual possession *if it is not sold*. Therefore the claim made by Zhang Shenbao is in conformity with the agreement made by both parties as well as the laws and should be upheld." A-300(emphasis added).

Second, and of fundamental importance, the actual holding of the People's High Court states:

> This Court confirms the truthfulness of the findings made by the Original Court. … The Agreement signed between Yeh, Yao-Hwang and Zhang Shenbao expressly states that the Agreement consists of the agreed terms regarding co-ownership of the disputed bronzeware between both parties and the possession and custody of

the disputed bronzeware by Zhang Shenbao if the sale is not completed before the designated date. As the Agreement represents the true intention of both parties and is not contrary to the laws and regulations, it should be deemed lawful and effective.

A-302, A-303. Lest there be any doubt about the High Court's holding, the Judgment states further:

Chongyuan Company's failure to return the disputed bronzeware to Zhang Shenbao was precisely because Yeh, Yao-Hwang requested the delivery of the disputed bronzeware to him by Chongyuan Company. Yeh, Yao-Hwang's action is in breach of the agreement between both parties in regard to the possession and custody of the disputed bronzeware. Therefore, Yeh, Yao-Hwang's claim is unsubstantiated and not accepted by this Court."

A-304.[21]

The High Court's holding that Yeh and Zhang included in the Agreement their agreed terms demonstrates the error the district court made in granting Yeh a right to possession. It is inconceivable that the Shanghai Judgment, in holding for Zhang

---

[21] These quotations show that court misread the Shanghai Judgment because it did not cite the actual holdings of the High Court in either the Trial Opinion or the Judgment. By only citing the lower court's holding, the Opinion implicitly misconstrued the Shanghai Judgment as a victory for Yeh. Zhang was actually the prevailing party.

55

and interpreting the parties' agreement as stating their intentions, could have possibly temporally limited Zhang's right as the court held here.

The legal conclusion of the Judgment that Yeh's co-ownership includes the right to possession is therefore erroneous as a matter of law. Since that conclusion was the basis of the court's "forced sale" order, that order should be reversed.

**B. The Court Erred as a Matter of Law in Ordering a Forced Sale.**

No New York case—in fact, no case anywhere that either the court or Yeh has cited—has forced the sale of a converted good. What would be even more unprecedented, and even more erroneous, is a forced sale of a good when one of the owners has a judgment giving him a right to possession. Yet that is what the Judgment orders.

Yeh never sought an order to sell the Vessel. He sought only damages, and damages could be satisfied by any number of means other than a court-ordered sale of the Vessel. If Yeh had desired a judgment ordering a sale and believed it was available, he could have and should have sought it. Based on the Trial Opinion and New York law as set forth above, nothing precludes Yeh from selling his own rights in the Vessel at any time.

The authority relied on by the Court in the Judgment does not apply to this case. The cases cited in the Judgment (SPA-7, SPA-8) are marital dissolution cases where the governing statute gives the court plenary power to divide and sell marital

property. No such statute applies to co-owned property that has been converted. Thus the court erred in relying on *Macklowe v. Macklowe*, 176 A.D.3d 470, 471 (1st Dept. 2019), after remand, 181 A.D.3d 475, 477 (1st Dept. 2020). *Macklowe* was a garden-variety marital dissolution action in which the court made an equitable distribution of the marital property pursuant to Domestic Relations Law §236(B)(5), which specifically gives the court power to order the sale of marital property. The sole issue in the case was simply the most equitable means of realizing the true value of the marital property. The same goes for *Capasso v. Capasso*, 129 A.D.2d 267, 275 (1st Dept. 1987). *Chiang v. Chang*, 137 A.D.2d 371 (1st Dept. 1988), also cited in the Judgment, is distinguishable because it was an action in equity to partition a cooperative apartment under Article 9 of the Real Property Law. *Ferguson v. McLoughlin*, 184 A.D.2d 294 (1st Dept. 1992), also does not apply because it was an action to partition property, not a suit for damages for conversion. In short, nothing in the Judgment provides any suggestion that courts have authority to order the sale of property as a remedy for conversion.

Yeh conceded below (A-364) that "Damages, as opposed to injunctive relief, are available in a conversion claim as it is 'a legal claim, not an equitable claim…'" He did not seek equitable relief, and certainly he has no claim that the court should exercise, on its own initiative, unprecedented equitable powers. New York law has long anticipated and provided for the resolution of disputes between co-owners.

57

There is nothing new-fangled in this case simply because Yeh brought a non-cognizable conversion claim instead of seeking a proper remedy.

The Judgment should be reversed because it erroneously orders a remedy not available for conversion.

### C. Yeh is Not Entitled to Sale Proceeds.

The court properly held (SPA-5, SPA-6) that Yeh was not entitled to damages, citing *Matter of Rothko's Estate*, 43 N.Y.2d 305, 323 (1977). The court's sale order is simply an end run around New York law because it effectively awards Yeh damages despite his failure of proof. Under *Rothko*, the court's order that the proceeds of any forced sale be shared equally erred as a matter of law. Yeh did not meet his burden of offering evidence as to the value of the parties' relative interests, and, because those interests are not identical, it cannot be presumed that they are of equal value.

The Shanghai Judgment, which the court held bound both parties, did not split the "bundle of rights" in the Vessel equally. Only Zhang (Su) was awarded possession, and possession is a paramount right in a work of art because it permits the possessor not only the right to enjoy appreciation of the visual aspects of the work but it also permits the economic benefits of display. The court erred as a matter of law in ordering an equal split of proceeds because Yeh had the burden of proving

damages, which is what his share of the proceeds must be, if they are related to conversion at all.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's rulings on Su's dispositive motions for judgment on the pleadings and summary judgment and the court's Trial Opinion and its Judgment, and remand to the district court to enter judgment in favor of Su.

Dated:    June 14, 2024
          New York, NY

                                        /s/   Xuejie Wong
                                        _____
                                        Xuejie Wong
                                        The Law Offices of Xuejie Wong PLLC
                                        139 Centre Street, Suite 208
                                        New York, New York 10013
                                        (212) 941-5483
                                        Attorneys for Plaintiffs-Appellants

59

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 13,894 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
        June 14, 2024

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Opinion and Judgment of the Honorable
   Valerie Caproni, dated February 7, 2024,
    Appealed From ...................................................... SPA-1

SPA-1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/07/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

WEI SU and HAI JUAN WANG,                                    :

                    Plaintiffs,                                 :

                    -against-                                  :

SOTHEBY'S, INC.,                                             :

                    Defendant.                                 :

------------------------------------------------------------------ :

SOTHEBY'S, INC.,                                             :

                    Counter-Claimant,                          :

                    -against-                                  :

WEI SU, HAI JUAN WANG, and YEH YAO HWANG,                    :

                    Counterclaim-Defendants,                   :        17-CV-4577 (VEC)

------------------------------------------------------------------ :        OPINION & JUDGMENT

YEH YAO HWANG,                                               :

                    Cross-Claimant,                            :

                    -against-                                  :

WEI SU and HAI JUAN WANG,                                    :

                    Cross-Defendants,                          :

------------------------------------------------------------------ :

WEI SU and HAI JUAN WANG,                                    :

                    Cross-Claimants,                           :

                    -against-                                  :

YEH YAO HWANG,                                               :

                    Cross-Defendant.                           :

------------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Wei Su ("Su"), Su's agent Hai Juan Wang ("Wang"), and Yeh Yao Hwang ("Yeh")

dispute the ownership of the Zhou Zha Hu, an ancient Chinese ritual wine vessel (the "Vessel"),

which was consigned by Wang to Sotheby's for auction.  After a seven-day bench trial in June

2022, the Court held, *inter alia*, that Su and Wang converted Yeh's fifty percent ownership

interest in the Vessel.[1]  Trial Op., Dkt. 278.  On December 2, 2022, the Court held a status

conference and ordered supplemental briefing on the issue of remedy.  *Id*. at 42; Order, Dkt. 286.

For the following reasons, the Court finds that Yeh and Su each hold a fifty percent undivided

ownership interest in the Vessel, including possessory rights, and orders that the Vessel be sold

with the net proceeds divided equally between Yeh and Su.

## DISCUSSION

### I.    Su and Yeh Share an Equal and Undivided Ownership in the Vessel

The Court assumes the parties' familiarity with the factual and procedural background of

the case, which the Trial Opinion reviewed at length.  As relevant to this opinion, the Court

previously held that "Yeh has a fifty percent ownership interest in the Vessel."  Trial Op. at 39.

The Court reserved ruling on "whether, under New York law, Zhang [Shenbhao] passed good

title to Su with respect to his fifty percent ownership interest or his right to possess the Vessel."

*Id*. at 41 n.57.

The Court partly based its finding that Yeh has a fifty percent ownership interest on the

Shanghai Judgment.  *Id*. at 12.  The Shanghai Judgment held that Zhang Shenbhao ("Zhang")

and Yeh were co-owners of the Vessel and that, while co-owners have a shared "right to possess,

---

[1]    The trial transcripts are found at docket entries 255, 257, 259, 261, 263, 265, and 267.  The transcripts at docket entries 255 and 257 both start at page one.  To differentiate between the two transcripts, the Court has included an "a" when citing the transcript at docket entry 255, and a "b" when citing the transcript at docket entry 257.

use and benefit from the co-owned item," Zhang had the right to possess the Vessel pending sale at the Chongyuan auction. *Id*.; Shanghai J., Pl. Ex. 4 at 13, 16.

This Court rejected the argument of Su and Wang that the subsequently-issued Henan Judgment extinguished Yeh's ownership interest. Trial Op. at 15. Because there was "no evidence that the Henan court was aware of the Shanghai Judgment or its award of co-ownership of the Vessel to Yeh" and because Yeh was not a party to that proceeding, the doctrine of collateral estoppel did not bind Yeh to the judgment. *Id*. Accordingly, "the Court decline[d] to assign any weight to the Henan Judgment" on to the question of whether Yeh had an ownership interest. *Id*.

The Court finds, however, that the doctrine of collateral estoppel precludes Su from relitigating the issue that was litigated in Henan: namely, as between Su and Zhang, who has an ownership interest in the Vessel. "The fundamental notion of the doctrine of collateral estoppel . . . is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies." *Constantine v. Tchrs. Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)). To benefit from collateral estoppel, a party must establish four elements: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (internal quotation omitted).

All four factors are met here. Su and Zhang fully litigated in the Henan Action the question of whether Zhang conveyed his ownership interest in the Vessel to Su; deciding that

question was necessary to the Henan court's determination that Zhang had transferred ownership of the Vessel to Su. *See* Stip. Fact 12, Dkt. 226 at 6–7.  The Henan court held that Su holds superior ownership rights to Zhang, and the parties present no valid reason to revisit that holding.[2]

Although the Shanghai Judgment recognized that Zhang had the exclusive right of possession under an agreement between Yeh and Zhang dated June 2, 2005 (the "2005 Agreement"), there is no evidence that Yeh and Zhang intended that Zhang's right of possession would persist if the Chongyuan auction were unsuccessful or if Zhang were to abandon his attempts to auction the Vessel.  The 2005 Agreement noted that the Vessel was entrusted to the Shanghai Art Auction, but, "[p]rior to 2005.11.30, before the auction was completed, the vessel was to be returned to Zhang Shengbo."  2005 Agreement, Pl. Ex. 3; *see also* Shanghai J., Pl. Ex. 4 at 11 (alternatively translating the 2005 Agreement to state "[t]he artifact will be delivered to Mr[.] ZHANG Shen Bao before the completion of sale on 30 November 2005 . . . .").

The Shanghai Judgment permitted Zhang to possess the Vessel "before its successful sale," while emphasizing the general principle that co-owners have an equal right of possession. Shanghai J., Pl. Ex. 4 at 13; *see also* Trial Op. at 14.  In short, the Shanghai Judgment and 2005 Agreement granted Zhang a limited right of possession pending the Chongyuan auction.  That right expired by at least 2007, when Zhang ceased trying to sell the Vessel at the Chongyuan

---

[2]      Yeh argues that Su could not have obtained Zhang's one-half share of the Vessel because Su was not a bona fide purchaser.  Yeh Mem., Dkt. 289 at 7.  To the extent that Zhang failed to raise this argument before the Henan court, however, he would be estopped from doing so now.  *See ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540 (JPO), 2023 WL 2585714, at *8 (S.D.N.Y. Mar. 21, 2023) (applying collateral estoppel where defendant raised only arguments that could have been raised in the prior action).

The Court further notes that awarding Su and Yeh equal ownership in the Vessel is consistent with New York law, which governs Yeh's conversion claim.  Trial Op., Dkt. 278 at 39.  Yeh's argument seems to be that a person who is not a bona fide purchaser for value is essentially a thief.  But that is not accurate.  While it is true that a thief cannot pass good title, *Candela v. Port Motors, Inc.*, 208 A.D.2d 486, 486–87 (2d Dep't 1994), Zhang was not a thief as to his undivided half share of the Vessel.

auction and instead sold it to Su without Yeh's knowledge or consent.[3]  Trial Op. at 4.  From that point, Su and Yeh equally held all rights of ownership, including the right of possession.  As the Court detailed in the Trial Opinion, Su's and Wang's subsequent conduct interfered with Yeh's ownership rights, including his right of possession, to his exclusion.[4]  *See, e.g., id.* at 16–19.

Accordingly, at the time of trial, Su and Yeh each held a one-half, undivided interest in, including equal right to possession of, the Vessel.

**II.    The Vessel Must Be Sold**

Because the record is devoid of evidence from which the Court can determine the Vessel's monetary value, and Su and Yeh cannot cooperate as joint owners, the Court orders the Vessel to be sold at the fair market value at the time of sale, with the net proceeds divided equally between Su and Yeh.

**A.  Yeh Introduced No Evidence of the Vessel's Value or His Damages**

In cases involving the conversion of an item of fluctuating value, courts generally award damages based on "the highest market value until the time of trial" on the theory that the

---

[3]      Su and Wang urge the Court to revisit its prior ruling that Yeh owns a one-half share in the Vessel on the grounds that Yeh had no possessory interest in the Vessel. Su & Wang Mem., Dkt. 290 at 7–8. As noted *supra*, however, Yeh had a possessory right in the Vessel once Zhang abandoned his attempts to sell the Vessel through Chongyuang.

Similarly, the assertion that Su and Wang did not convert Yeh's share of the Vessel because their attempt to sell the Vessel through Sotheby's failed is a blatant mischaracterization of the applicable law.  It is true that "an innocent purchase from a thief is not conversion" unless, *inter alia*, the innocent purchaser refuses "to surrender possession to the lawful owner." 23 N.Y. Jur. 2d Conversion § 28 (2023). Su, however, has conceded that he was not an innocent, bona fide purchaser, and both Su and Wang refused to surrender the Vessel to Yeh or share possession of it with Yeh. Trial Op. at 17, 19.

Finally, with respect to Su's and Wang's conclusory assertion that the Court's prior rulings regarding the statute of limitations are incorrect, the Court has rejected this argument multiple times. *See, e.g.*, Order, Dkt. 221 at 3 (citing *Wei Su v. Sotheby's Inc.*, 490 F. Supp. 3d 725, 730 (S.D.N.Y. 2020)).

[4]      Su's and Wang's reliance on *Hudson v. Swan*, 83 N.Y. 552 (1881), is misplaced. *See* Su & Wang Mem. at 6. While co-owners of chattel generally cannot maintain an action for replevin against each other, they may do so if "the possession of the co-owner results in . . . such a hostile appropriation of it as to exclude, destroy, or ignore the interest of the other tenant therein." *Gates v. Bowers*, 169 N.Y. 14, 17 (1901) (citing *Hudson*, 83 N.Y. at 552). In this case, Su and Wang consigned the Vessel to Sotheby's in total derogation of Yeh's interest.

"injured buyer is . . . entitled to the benefit of his bargain." *Will of Rothko*, 56 A.D.2d 499, 502–503 (1st Dep't 1977), *aff'd sub nom. Matter of Rothko's Estate*, 43 N.Y.2d 305 (1977). Although the award need not be based on an exact determination of the converted item's value, the Court must have a "reasonable basis of computation" and cannot merely speculate. *Matter of Rothko's Estate*, 43 N.Y.2d at 323.  When courts cannot arrive at a reasonable valuation of a rare item, however, a forced sale is appropriate. *See Macklowe v. Macklowe*, 112 N.Y.S.3d 438, at *20 (Table) (N.Y. Super. Ct. 2018) (ordering the sale of co-owned art that could not be reasonably valued).

Yeh argues that the record contains multiple valuations of the Vessel.[5]  First, Yeh urges the Court to use Sotheby's most recent estimate of $3 to $5 million, as reflected in Yeh's and Sotheby's November 2022 letter.  Yeh Mem. Dkt. 289 at 11; Letter, Dkt. 279.  That letter was submitted after the close of trial and is not in evidence.

Second, Yeh argues that his own testimony proved the Vessel's value.  Yeh testified that Su's and Zhang's conversion of the Vessel deprived him of the ability to undertake a construction project that would have required a $1 million initial investment, and ultimately a $3 million investment.  Tr. 490–92.  Yeh did not testify, however, whether he believed that the sale of the Vessel would have provided him all or part of the funds needed for the initial investment, or otherwise explain how he estimated the Vessel's value.  In short, Yeh's testimony offers no basis on which the Court may value the Vessel.

---

[5]     Yeh does not rely on the Chongyuan valuation, as he argues that Chongyuan "inflate[d] the Vessel's valuation."  Yeh Mem. at 11.  Even if he did, the Court could not base an award of damages on the Chongyuan valuation, *see, e.g.*, Pl. Ex. 86 at 2, because the Chongyuan valuation is hearsay, and no one established its admissibility for the truth of the matter asserted pursuant to Federal Rule of Evidence 803(6).  But even if it were admissible for its truth, the Court would not credit it, as "various individuals associated with Chongyuan . . . colluded" to deprive Yeh of his ownership interest.  Trial Op. at 27–28.

Third, Yeh points to Sotheby's valuation in its 2014 Consignment Agreement, which estimated the Vessel's value to be between $2.8 and $3.8 million.  *See* Pl. Ex. 51 at 3.  That document is hearsay to the extent it is being proffered for the truth of the matter asserted (*i.e.*, that experts at Sotheby's estimated that the value of the Vessel at auction is between $2.8 and $3.8 million).  Fed. R. Evid. 802.  The agreement was admitted not for its truth but as proof that an agreement between Wang and Sotheby's existed.  *See Stryker v. HSBC Securities (USA)*, No. 16-CV-9424 (JGK), 2021 WL 5279392, at *1 (S.D.N.Y. Nov. 11, 2021) ("[W]ith respect to documents, it would usually be necessary to find an exception to the rule against hearsay . . . .").  There was no evidence produced at trial that would establish that any exception to the hearsay rule applies to the estimated value of the Vessel contained in that document.

Nor did any representative from Sotheby's testify regarding the estimated value of the Vessel or its method of valuation.  Wang, who conspired with Su to deprive Yeh of the Vessel, stated only that Sotheby's suggested the estimate "based on the market value."[6]  Tr. 73a:15.  Wang did not explain how the market value was determined; asked how the estimate was determined, Wang responded that, based on market value, the Vessel "might also possibly go up more than [$] 3.8 million."  Tr. 73a:13–20.

### B.  The Vessel Must Be Sold

Because the "[C]ourt cannot determine the value of" the Vessel, it must be sold.  *Macklowe*, 112 N.Y.S.3d 438 at *20; *see also Capasso v. Capasso*, 129 A.D.2d 267, 275 (1st Dep't 1987) (ordering the sale of a unique marital residence when faced with competing

---

[6]     Even if the Sotheby's Consignment Agreement were admissible to establish that, as of the date of the consignment, Sotheby's estimated the value of the Vessel to be between $2.8 and $3.8 million, which it is not, Wang's trial testimony suggests that Sotheby's estimate may have been influenced, at least in part, by Wang's negotiations.  *See* Tr. 41b:8–9.  Wang testified that she "agree[d]" to Sotheby's valuation estimates "as long as there was a low of [$] 2.8 [million].  The more the better."  *Id.*  Because no one from Sotheby's testified, the Court has no basis for evaluating the significance *vel non* of her specifying the lowest estimated value she would accept.

valuations).  Courts maintain broad discretion in ordering a partition or sale and are guided by

highly "flexible . . . equitable principles."  *Chiang v. Chang*, 137 A.D.2d 371, 374 (1st Dep't

1988).

It is black letter law that when two or more persons own property jointly, and one owner

is deprived of possession, courts may exercise their equitable power to order "a sale where

partition is impracticable . . . ."  *Loker v. Edmans*, 204 A.D. 223, 227 (3d Dep't 1923) (internal

quotation omitted) (ordering sale of personal property in a divorce); *see also Chiang*, 137 A.D.2d

at 374 (noting that the ability of courts to order a partition or sale of personal property is

"uncontrovertedly established in New York").  Because the Vessel is an indivisible artifact,

partition is not possible; accordingly, it must be sold.  *See Ferguson v. McLoughlin*, 184 A.D.2d

294, 295 (1st Dep't 1992) (forcing the sale of a building where physical division would

"destroy" it).

A forced sale is appropriate where "the status of the parties has been so changed . . . that

they cannot mutually enjoy the benefits" of joint ownership.  *Loker*, 204 A.D. at 228; *see also*

*Capasso*, 129 A.D.2d at 276 (collecting cases).  New York courts have long ordered the sale of

jointly-owned personal property in the face of ownership disputes or conversion by one owner.

For example, in *Shehan v. Mahar*, 17 Hun. 129, 1879 N.Y. App. Div. LEXIS 1 (3d Dep't 1879),

the court ordered the sale of a jointly-owned horse that the plaintiff claimed was stolen by the

defendant.  In light of Su's and Wang's protracted deception and "elaborate scheme to conceal

their conversion of the Vessel," Trial Op. at 21, and the parties' animosity-charged conduct

during the course of litigation, it is apparent that there is no path to cooperative co-ownership of

the Vessel.[7]

---

[7]      While Su and Wang argue that the Court's decision to determine the issue of possession violates the party
presentation principle, *see* Su & Wang Mem. at 1, the question of possession is clearly raised by Sotheby's

8

The Court further notes that a forced sale seems entirely appropriate given both owners' desire to convert their interests in the Vessel to cash.  The whole reason this case exists is because Su tried to sell the Vessel at a Sotheby's auction, providing clear evidence of his desire to sell the Vessel.  There is also no question that Yeh, though not consulted on the attempted sale at Sotheby's, wants to sell the Vessel.  *See* Yeh Mem. at 3 ("The parties have regarded it as an investment vehicle to be monetized.").  Indeed, the undisputed evidence from trial shows that he has been trying to sell his interest in the Vessel since at least 2005, when he consigned it for auction at Chongyuan in China.  Trial Op. at 3.  Because both parties want to sell the Vessel, a forced sale with a division of proceeds is entirely equitable.

The Vessel is to be sold at fair market value, and Su and Yeh are to share the net proceeds of the sale equally.  *See Macklowe*, 112 N.Y.S.3d 438 at *20 (splitting the net proceeds of the sale of a co-owned property equally).

**III.   Yeh Is Not Entitled to Additional Damages**

Yeh seeks "at least" $2.5 million in compensatory damages, $2.5 million in punitive damages, costs, and pre-judgment interest.  Yeh Mem. at 19.  For the following reasons, the Court finds that Yeh is not entitled to damages beyond what he recovers from the sale of the Vessel.[8]

**A.   Yeh Is Not Entitled to Punitive Damages**

New York law provides that punitive damages may be recovered for an act of conversion "where the circumstances show that the conversion was accomplished with malice, insult,

---

interpleader.  Sotheby's filed an interpleader seeking a determination of whether Su and Wang or Yeh had superior title to the Vessel because it was faced with competing claims.  Sotheby's Answer, Dkt. 13 at 8.  Because Su and Yeh cannot cooperate as co-owners, merely determining that they each hold an equal ownership interest in the Vessel would not address the concerns raised by Sotheby's interpleader.

[8]      Yeh is also not entitled to damages stemming from a lost investment opportunity following his inability to liquidate his share of the Vessel.   In certain circumstances, conversion damages may include lost profits where

reckless and willful disregard for plaintiff's rights, or by other proof evidencing the aggravated nature of the act." *Villalba v. Houslanger & Assocs., PLLC*, No. 19-CV-4270 (PKC), 2022 WL 900538, at *21 (E.D.N.Y. Mar. 28, 2022) (internal quotation omitted).  Yeh, however, made no demand for punitive damages in his Crossclaim, nor did he timely move to amend his pleading to demand punitive damages.

Because Su and Wang were deprived of timely notice of a demand for punitive damages, Yeh cannot seek punitive damages now.  *See Crispino v. Greenpoint Mortg. Corp.*, 2 A.D.3d 478, 479 (2d Dep't 2003) (noting that the plaintiff was "not entitled to punitive damages, as she made no such demand in her complaint"); *Dental Health Assocs. v. Zangeneh*, 34 A.D.3d 622, 625 (2d Dep't 2006) (same); *Belt v. Girgis*, 82 A.D.3d 1028, 1030 (2d Dep't 2011) (same); *Gravitt v. Newman*, 114 A.D.2d 1000, 1002 (2d Dep't 1985) (same); *Porrini v. McRizz, LLC*, No. 19-CV-3979 (ARR), 2020 WL 1676101, at *5 n.2 (E.D.N.Y. Apr. 6, 2020) (noting that while the claimants' conversion claim plausibly pled facts sufficient to warrant punitive damages, punitive damages were unavailable because claimants had "not specifically demanded punitive damages in their counterclaims").

The cases on which Yeh relies to argue that punitive damages are available despite his failure to demand them are inapposite.  In limited circumstances, a claimant may proceed on a

---

"they might reasonably be supposed to follow from the conversion."  *Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.*, 52 A.D.3d 674, 676 (2d Dep't 2008) (quoting *Barrington v. Offenbach*, 163 N.Y.S. 423, 426 (1st Dep't 1917)).  Even assuming that Zhang, based on his conversations with Yeh regarding the loan, could have reasonably expected that lost profits would flow from his conversion of the Vessel, Yeh introduced no evidence to quantify those damages or to explain why Su and Wang should have reasonably anticipated such damages.

Yeh has also not introduced any evidence regarding the anticipated yield of the putative investment, such as the cost at which the buildings he intended to construct could be rented or sold, the anticipated revenue of the contemplated music hall, or the bid price of other contractors for this project.  In short, Yeh has failed to establish that he suffered "actual damages" from this lost investment opportunity because he failed to introduce evidence establishing "a reasonable estimate of the extent of the harm."  *Lewin v. Levine*, 146 A.D.3d 768, 769 (2d Dep't 2017).

10

claim for punitive damages at trial without the defendant's consent even if such damages are not explicitly demanded when the detailed factual allegations or the plaintiff's conduct otherwise provide notice, before trial, of a potential claim for punitive damages. *See Gill v. Montgomery Ward & Co.*, 284 A.D. 36, 40, 43 (3d Dep't 1954) (punitive damages claim were appropriately included in trial because the complaint alleged that the defendant acted "willfully, wrongfully, forcefully, and maliciously" in falsely imprisoning the plaintiff for more than an hour); *see also Mendoza v. City of Rome*, 872 F. Supp. 1110, 1125 (N.D.N.Y. 1994) (noting that an award for punitive damages was appropriate despite the plaintiff's failure to demand punitive damages because "[t]he defendant consented to that issue being tried").

In *Bondi v. Bambrick*, 308 A.D.2d 330 (1st Dep't 2003), for example, the First Department held that the claim for punitive damages was properly tried because the complaint contained detailed descriptions of criminal conduct, including that the defendant "acted recklessly when, while intoxicated, he drove his vehicle over the double yellow line on the roadway and struck plaintiff." *Id.* at 330. In contrast Yeh's Crossclaim alleges only, and in a perfunctory manner, that Su and Wang intentionally interfered with his ownership rights. *See, e.g.*, Crossclaim, Dkt. 104 ¶ 25 ("At the time Wang entered into the Consignment Agreement [with Sotheby's] he was aware that Yeh had an ownership interest in the Property . . . ."). Although Yeh argues that he only learned of "salient" facts supporting his claim for punitive damages at trial, Yeh Mem. at 15, trial is not a means to conduct discovery in aid of unasserted demands for remedy.

Yeh improperly waited to raise the issue of punitive damages until after trial and did so over the objection of the counterparty. This unreasonable delay precludes him from proceeding with a claim for punitive damages. *See Licameli v. Roberts*, 277 A.D.2d 1057, 1057 (4th Dep't

11

2000) (memorandum opinion) (affirming denial of leave to amend complaint to add claim for punitive damages in light of the plaintiff's "lengthy delay" and because "discovery was complete").

At this late juncture, Su and Wang "have been deprived of the opportunity to conduct discovery and establish a defense with respect to this belated damage claim." *Heller v. Louis Provenzano, Inc.*, 303 A.D.2d 20, 23 (1st Dep't 2003) (holding that the plaintiff's "inexcusable and inordinate delay" of six years precluded him from proceeding with a claim for punitive damages before retrial). In order to permit Su and Wang to proffer an adequate defense, the Court would be forced to reopen discovery or retry this matter — seven years after this matter commenced — and unjustifiably increase their litigation costs. The Court is unwilling to do so.[9]

### B. Yeh Is Not Entitled to Prejudgment Interest

N.Y. CPLR § 5001 generally requires the award of prejudgment interest in a conversion case unless the remedy "account[s] not only for the plaintiff's lost assets but for use of those assets during the time between injury and recovery." *ABKCO Music & Records Inc. v. Chimeron LLC*, 517 F. App'x 3, 7 (2d Cir. 2013) (citing *Bamira v. Greenberg*, 295 A.D.2d 206, 207 (1st Dep't 2002)); *see also Will of Rothko*, 56 A.D.2d at 503 (though "the general rule with regard to the measure of damages in conversion is to award the value of the property at the time of conversion . . . where the conversion of an item of fluctuating value is involved, then damages are measured by considering the highest market value within a reasonable time after notice of the conversion" (emphasis omitted)).

Because the Court awards Yeh damages equal to one-half the net proceeds of the sale of the Vessel at its fair market value, the damages award accounts for any appreciation in the value

---

[9]     The Court is unwilling to reopen evidence in this case, but had Yeh put Su and Wang on notice that punitive damages were being sought, he may well have been entitled to such damages given their conduct.

of the Vessel and the loss of use of money during the period of conversion.  An additional award of prejudgment interest "would constitute a windfall double recovery."  *Bamira*, 295 A.D.2d at 208 (declining to award prejudgment interest where the plaintiff was awarded the asset's present value).

### C. Yeh Is Not Entitled to Attorneys' Fees or Costs

Yeh seeks an award of fees and costs associated with the recovery of the Vessel.  Yeh Mem. at 23.  Pursuant to the American Rule adopted by New York, attorneys' fees and litigation costs are generally not recoverable absent a statutory or contractual provision, but may be recoverable when a party has "acted with disinterested malevolence and . . . intentionally sought to inflict economic injury on another party by forcing him or her to engage counsel."  *Palermo v. Taccone*, 79 A.D.3d 1616, 1619 (4th Dep't 2010) (declining to award fees and costs for the conversion of equipment).

There is no evidence that Su and Wang deliberately "sought to inflict economic injury on [Yeh] by forcing [him] to engage legal counsel."  *United Pickle Co. v. Omanoff*, 63 A.D.2d 892, 892 (1st Dep't 1978) (awarding partial legal fees for defense against lawsuits designed "to harass and oppress").  While Su purchased the Vessel knowing that its "title was cloudy," "more is required than bad faith."  *Reif v. Nagy*, 175 A.D.3d 107, 131 (1st Dep't 2019) (denying attorneys' fees where defendant bought art despite knowing that plaintiffs claimed ownership).

That Su and Wang engaged in a complex conspiracy to deprive Yeh of his ownership interest in the Vessel is also not enough to warrant an award of fees and costs.  *See Palermo*, 79 A.D.3d at 1619 (holding that attorneys' fees were not warranted where the defendant intentionally locked away the plaintiff's property to prevent recovery); *see also Reif*, 175 A.D.3d at 131.  Although their tortious acts may have been malicious, fees and costs are not recoverable

13

"unless the sole motivation of the malicious acts complained of constituted a disinterested malevolence on the defendant's part." *Green v. Fischbein Olivieri Rozenholc & Badillo*, 119 A.D.2d 345, 351 (1st Dep't 1986) (internal quotation omitted). The Court cannot conclude that Su and Wang were motivated solely by disinterested malevolence. Based on the complex legal and factual background of this dispute — including that the Henan Judgment found Su to be the sole owner of the Vessel — Su made a "business calculation" on the belief, though incorrect, that "title could possibly be successfully defended." *Reif*, 175 A.D.3d at 131.

### IV.   Su's and Wang's Replevin Claim Is Dismissed as Moot

In light of the Court's order to sell the Vessel, and Su's and Wang's statement that "[a]ny need for replevin has been eliminated," the Court dismisses their replevin claim. Su & Wang Mem. Dkt. 290 at 13 n.11; *see also* Letter, Dkt. 182 at 1–2.

### CONCLUSION

For the foregoing reasons, the Court finds that Su and Yeh each hold an undivided 50% ownership interest in the Vessel and orders the sale of the Vessel, with the net proceeds from the sale distributed equally. Pending appointment of a receiver pursuant to N.Y. CPLR § 5106, the Vessel is to remain in Sotheby's possession. The Clerk of Court is respectfully directed to enter judgment in favor of Yeh and against Su and Wang.

Sotheby's motion for fees and costs is DENIED without prejudice to refiling with an updated statement of fees and costs. *See* Letter, Dkt. 279 at 1 (noting that Sotheby's counsel has continued to participate in discussions with the parties through at least November 2022). The Clerk of Court is respectfully directed to lift the stay on the motion at Dkt. 122 and to terminate the motion. The Clerk of Court is further directed to reinstate Sotheby's Inc. as a party in this matter for the limited purpose of the adjudication of Sotheby's motion for attorneys' fees.

SPA-15

Not later than **March 15, 2024**, all parties, including Sotheby's, must meet and confer for at least one hour and submit a joint letter that certifies they have done so and states:

(1) whether the parties have reached a settlement as to Sotheby's motion for fees and costs, and if not, a proposed briefing schedule for Sotheby's renewed motion;[10]

(2) the name of an agreed-upon receiver pursuant to N.Y. CPLR § 5106 or, if no agreement is reached, the name, CV, and proposed fee proposal of each party's proposed receiver; and

(3) the parties' availability for an in-person status conference, if required, preferably on a Friday at 10:00 A.M.

**SO ORDERED.**

Date:  **February 7, 2024**
       **New York, New York**

                                          **VALERIE CAPRONI**
                                          **United States District Judge**

---

[10]     To the extent that an appeal is taken in this matter, the Court retains jurisdiction to adjudicate motions for attorneys' fees.  *See Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) ("[N]otwithstanding a pending appeal, a district court retains residual jurisdiction over collateral maters, including claims for attorneys' fees." (collecting cases)).